**Larry O. LARSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4131.**

Supreme Court of Alaska.

July 18, 1980.

John Hagey, Asst. Public Defender, Fairbanks, Walter Share, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Susan M. Delbert and Mark I. Wood, Asst. Dist. Attys., and Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

This is an appeal from a superior court order denying a motion by Larry Larson to withdraw a plea of guilty under Alaska Criminal Rule 32(d) and denying post conviction relief for ineffective assistance of counsel under Criminal Rule 35(b). We affirm the court's order in both respects.

In the early morning hours of August 1, 1975, Larry Larson, a laborer, got into an argument in the Roustabout, a Fairbanks bar. He left the bar for a short period with his girlfriend, Becky Simpson, to run an errand. During the trip back to the Roustabout, Larson and Simpson had a conversation about a gun that Larson had in the car; Simpson told Larson that "if he was going to fight to use his fists." Subsequently, Larson got into a fight at the bar. Three bar patrons said Larson and his brother started it, but Simpson denied this. About twenty persons joined in the fight, including one who hit Larson in the head with a pool cue. Larson managed to escape out the back door, went to his car, and returned with his gun. He fired several shots. One bystander was hit by a bullet. Larson ran out and drove off with his brother, who had in the meantime backed the car out of a parking lot and was waiting with the engine running. Police apprehended Larson almost immediately and found a .22 caliber pistol underneath the car.

Earlier that same morning, Larson had been arrested for operating a motor vehicle while intoxicated, and had appeared drunk to both the booking and arresting officers. The same officer arrested Larson on the shooting charge, and indicated that Larson seemed more sober then.

Larson was indicted for shooting with intent to wound, a violation of AS 11.15.150. On November 12, 1975, he withdrew his earlier not guilty plea and entered a plea of guilty. Judge Van Hoomissen subsequently sentenced Larson to eight years, with no parole eligibility until he served one-third of his sentence. Larson's motion to modify his sentence, filed nearly two years later, was denied after a hearing.

On January 19, 1978, Larson filed a motion to vacate his sentence and set aside the conviction because of the failure of his counsel and the court to inform him of his possible defense, based on intoxication, to a specific intent offense. The motion was denied on May 16. Larson's motion for reconsideration was likewise denied, but a

request for a hearing to supplement the record on appeal was granted.

## I. WITHDRAWAL OF GUILTY PLEA

Larson contends that he should be permitted to withdraw his guilty plea because the trial judge, in accepting the plea, failed to meet the requirements of Criminal Rule 11(c)(1). The rule provides in part:

The court shall not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

(1) determining that he understands the nature of the charge.

According to Larson, the judge failed to explain to him that shooting with intent to wound is a specific intent crime. This, according to Larson, prevented him from understanding the charge well enough so that he would have realized that he had a possible diminished capacity defense due to his alleged intoxication.

Rule 11 does not require a trial judge to follow any ritualistic formula in determining whether a defendant understands the nature of a charge. The United States Supreme Court, in discussing the similar federal rule, Criminal Procedure Rule 11, has noted:

The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself.

*McCarthy v. United States*, 394 U.S. 459, 467 n.20, 89 S.Ct. 1166, 1171 n.20, 22 L.Ed.2d 418, 426 n.20 (1969).

■ A number of factors may be considered in determining whether a defendant understands the nature of a charge. Among them are the defendant's age, intelligence, prior history of involvement in legal proceedings, the complexity of the statute, possible language barriers, and whether the defendant is represented by counsel or is proceeding *pro se*.[1]

■ In this case the judge told Larson twice that he was charged with "shooting with intent to wound." He asked Larson whether he had enough opportunity to discuss the case with his lawyer and whether Larson had heard the charges read to him that were contained in the indictment. Larson answered both questions in the affirmative.[2] The indictment charged:

1. *See Irizarry v. United States*, 508 F.2d 960, 964 n.3 (2d Cir. 1974) (considerations of defendant's age, representation by counsel, intelligence, education, and language barriers); *Dorrough v. United States*, 385 F.2d 887, 891, 893 (5th Cir. 1967), *cert. denied*, 394 U.S. 1019, 89 S.Ct. 1637, 23 L.Ed.2d 44 (1969) (complexity of statute and defendant's prior history of experience with criminal proceedings); *Else v. State*, 555 P.2d 1210, 1213 (Alaska 1976) (importance of exacting inquiry where defendant does not have a lawyer).

2. The following colloquy took place at Larson's plea hearing:

MR. INGRAHAM: Your Honor, I consulted with the defendant, and have consulted before, and he desires, at this time, to change his plea to—from not guilty to guilty to the charges. And I will state, for the record, I have advised him that he does have a right to have a jury trial, and advised him generally of what the State must prove. And we reviewed together at the omnibus hearing, the subpoenas that have been served on different witnesses, and I got statements of those witnesses. So, we have a pretty good idea of what the case would be. He's been in jail

since Sunday night, thinking about the matter. I think he's given it full consideration.
THE COURT: Larry Larson, have you heard what Mr. Ingraham, your attorney, has represented to this court concerning you?
MR. LARSON: Yes, I have.
THE COURT: Did you understand what he said?
MR. LARSON: Yes, I did.
THE COURT: Is it your present desire to withdraw the plea of not guilty that you have previously entered in this cause?
MR. LARSON: Yes, it is.
THE COURT: Do you believe that you're sufficiently knowledgeable about the matters that we're here discussing—your case, this proceeding—to make this decision?
MR. LARSON: Yes, I do.
THE COURT: You've had plenty of opportunity to talk with your lawyer, and understood what he's told you?
MR. LARSON: Yes.
THE COURT: All right. You may withdraw your plea. That, in effect, places us right back at the beginning of this matter, and there is an indictment outstanding here, charging you with a shooting with intent to wound. I will ask you, sir, have you heard

That on or about the 1st day of August, 1975, at or near Fairbanks, in the Fourth Judicial District, State of Alaska, Larry O. Larson, being then and there armed with a dangerous weapon, to-wit: a .22 cal. revolver, did wilfully, unlawfully, feloniously and maliciously shoot one Arthur Mayo with intent to wound him by shooting him in the buttocks.

Larson was twenty-three at the time of the plea hearing, and was no neophyte to court proceedings. His prior record included armed robbery, carrying a concealed weapon, disorderly conduct, possession of marijuana and several additional charges stemming from drunkenness. The statute in this case is not complex and would appear to be readily comprehensible to a layman.[3]

Unlike *Else,* Larson was represented by counsel. Moreover, the requirement of "intent to wound," unlike the necessity for a weapon to be loaded to be considered "dangerous," would seem to be self-explanatory to a reasonably intelligent defendant. Larson must have understood that to be guilty of the charge he had to have shot the pistol with such an intent.

Larson's presentence report indicates that he is of above average intelligence. He was represented by counsel. In short, under the circumstances, we conclude that Larson understood the "specific intent" element of the crime charged sufficiently well so that his guilty plea was made intelligently.[4]

■ In any event, the crux of Larson's contention is not that he failed to understand the intent element of the crime, but that the judge failed to discuss the intent element in such a way that it would have suggested the possibility of an affirmative defense. This is not the standard required by Rule 11. Moreover, it is appropriately a duty of a defendant's lawyer to suggest affirmative defenses and not a duty of a trial judge. As we noted in *Else v. State,* 555 P.2d 1210, 1214 (Alaska 1976):

> We agree with the case authority to the effect that the trial court is not normally required to inform a defendant of evidentiary defenses before accepting his guilty plea. [Footnote omitted.]

In *Else,* a defendant, appearing without counsel, pled guilty to the offense of assault with a dangerous weapon. We held that the judge was required to inform the defendant that for a rifle to be considered "a dangerous weapon" under the statute, it must either be loaded or used as a bludgeon. We stated:

> We do not believe that a lay person appearing without counsel can be expected to interpret the term "dangerous weapon" as implying the requirement that a gun be loaded. A person untrained in law may well consider a gun, whether

these charges read to you that are contained in this indictment?

MR. LARSON: Yes, sir.

THE COURT: Did you then, and do you now, understand those charges?

MR. LARSON: Yes.

THE COURT: To those charges, how do you plead?

MR. LARSON: Guilty.

THE COURT: Do you understand that by offering a plea of guilty you are, in effect, admitting the truth of the charge?

MR. LARSON: Yes.

THE COURT: Do you further understand that with a plea of guilty, you can be convicted of this offense—of shooting with intent to wound?

MR. LARSON: Yes, I do.

3. The full text of former AS 11.15.150 provides: *Shooting, stabbing or cutting with intent to kill, wound or maim.* A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.

4. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), cited by appellant, is not on point. In *Henderson,* the defendant was indicted for first degree murder and pled guilty to second degree murder. The defendant contended in a petition for habeas corpus that the element of intent was never explained to him. The court agreed with the defendant, noting that he had never been formally charged with second degree murder so that he was not even on notice of the contents of the statute which contained the intent element. Larson was plainly on notice of the contents of the statute, and unlike Morgan, was not retarded.

loaded or unloaded, a dangerous weapon because of its potential for causing injury or death. In the instant case, we hold that Else did not receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."

555 P.2d at 1215.

■ The United States Circuit Court of Appeals for the District of Columbia, in a case cited in *Else,* discussed the issue as follows:

It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think "understandingly" refers merely to the *meaning* of the charge, and what acts amount to being *guilty* of the charge, and the *consequences* of pleading guilty thereto . . . . .

*Edwards v. United States,* 256 F.2d 707, 710 (D.C.Cir.), *cert. denied,* 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958) (emphasis in original).[5]

We hold that there was no violation of Rule 11 committed by the trial judge in accepting Larson's plea.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Larson also claims that his constitutional right to effective assistance of counsel was denied. He points to two alleged errors. The first was the failure of his lawyer to explain to him the element of specific intent, and to explore the possibility of a diminished capacity defense. The second was his lawyer's failure to notify him of his right to disqualify the sentencing judge.

■ Our two-part test for determining the effectiveness of counsel was explained

in *Risher v. State,* 523 P.2d 421, 423–25 (Alaska 1974). Larson must first show that his lawyer's skill in these two instances fell below that of a lawyer with ordinary training and skill in the criminal law, and second, that this defective performance contributed in some way to his conviction.[6]

■ In our opinion, Larson has failed to meet the first part of this test so it is unnecessary to consider the second part. At the hearing to supplement the record on appeal, Mr. Ingraham, Larson's lawyer at the plea hearing, testified that he did not remember informing Larson of the possibility of a diminished capacity defense, but Ingraham did consider it in preparing for trial. Ingraham reviewed the testimony of the witnesses the state had under subpoena and concluded that the defense was not relevant to Larson's case.

[I]t looked to me that there was pretty good evidence that he [Larson] got in a fight, was mad at people he went—or he got in the fight with, he went to get his gun, that was the purpose of getting it, and purpose of having the getaway car double parked with the engine running right in front of the bar was to—to shoot the shots in the bar and then jump in the car and then speed off. Which is what happened. And then when he was stopped, the police officer found a weapon, a .22 I think it was, on his side of the car right—thrown right under the car. So put that altogether, looked to me like there was pretty good evidence that he had intended to go get his gun and come back and shoot somebody.

Although we express no view as to whether a jury might have accepted a diminished capacity defense on these facts, we would agree that the outlook for an acquittal or conviction on a lesser offense was so improbable that Mr. Ingraham's failure to ful-

---

5. "Where the accused is represented by adequate counsel, the trial court need not make exhaustive examination as to possible defenses, even if the testimony of the accused gives some indication that such a defense might be raised at trial." *People v. Edwards,* 27 Mich.App. 83,

183 N.W.2d 392, 393 (1971); *see also State v. Hickey,* 110 Ariz. 527, 521 P.2d 614, 616 (1974).

6. *See Green v. State,* 579 P.2d 14, 15–16 (Alaska 1978). In the context of a plea withdrawal, see *Winkler v. State,* 580 P.2d 1167, 1173 (Alaska 1978).

ly explain the possibility to Larson would not render his legal assistance ineffective.[7]

Ingraham did not discuss with Larson that he might disqualify the sentencing judge because

> [C]ounsel knew then of no "facts that would—that would lead me to—to think that it would be advisable to disqualify any of the judges."

Larson has failed to state why he considers this alleged omission of any importance.[8]

We conclude that Larson was provided with adequate representation. The order of the superior court denying Larson relief is AFFIRMED.

---

7. *See Morgan v. State*, 582 P.2d 1017, 1022–23 (Alaska 1978) (rejecting argument that defendant was denied effective assistance because counsel failed to explain elements of felony murder). American Bar Association Standards Relating to the Defense Function 5.1(a) and (b) provide:

> (a) After informing himself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including his candid estimate of the probable outcome.

> (b) It is unprofessional conduct for a lawyer intentionally to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his plea.

8. In *Riley v. State*, 608 P.2d 27, 29 (Alaska 1980), we stated:

> The decision whether or not to peremptorily excuse an assigned judge is a strategic one which should ordinarily be made by a lawyer after consultation with his client. [Footnote omitted.]