James **ADKINSON** and Bethany R. Adkinson, Appellants,

v.

**ROSSI ARMS COMPANY** and Mountain View Sports Center, Inc., Appellees.

No. 6212.

Supreme Court of Alaska.

Feb. 25, 1983.

A. Lee Petersen, A. Lee Petersen, Inc., Anchorage, for appellants.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage for Rossi Arms Company, appellee.

Nicholas C. Newman, Lee, Smart, Cook & Martin, P.S., Inc., for Mountain View Sports Center, Inc., appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of a wrongful death action instituted by Walter E. Butts, Jr., against James Adkinson for the fatal shooting of Butts' son, Steven Butts. Adkinson had been previously tried and convicted in superior court of manslaughter for the fatal shooting of Steven Butts. Adkinson's manslaughter conviction was subsequently upheld on appeal by this court. *Adkinson v. State*, 611 P.2d 528 (Alaska 1980), *cert. denied, Adkinson v. Alaska*, 449 U.S. 876, 101 S.Ct. 219, 66 L.Ed.2d 97 (1980). Of significance to the resolution of this appeal is the following portion of our opinion in *Adkinson*, 611 P.2d at 530–31:

> At trial, prosecution and defense witnesses offered differing accounts of how the shooting occurred. Butts' two companions testified that Adkinson was upset as he approached them, and that although they were conciliatory, Adkinson was belligerent, waving his shotgun around, and eventually, when he was within inches of Steven Butts, pointing the gun directly at him moments before it discharged. Adkinson took the stand in his own defense and denied pointing his gun at Butts. Both Adkinson and his wife testified that the weapon was pointed to the side of Butts. Adkinson testified that Butts was agitated, "building himself up into a frenzy," and attempted to grab the weapon from Adkinson's hands, thereby pulling it towards himself when it discharged.[1]

Sometime after the wrongful death action had been commenced, Adkinson and his wife filed a third-party complaint against Rossi Arms Company (Rossi) and Mountain View Sports Center, Inc. (Mountain View).[2] In this third-party complaint the Adkinsons alleged in part that Rossi had manufactured and Mountain View had sold a defective shotgun, that the shooting of Steven Butts was due to a defect in the shotgun which caused it to discharge accidentally, and that the third party defendants were therefore liable for the death of Steven Butts. The Adkinsons additionally asserted that James Adkinson's manslaughter conviction, his prison sentence, and the wrongful death claim were all the direct result of Rossi and Mountain View's negligence and breach of warranty in the manufacture and sale of the shotgun. In addition to a claim for reimbursement and indemnification for any judgment recovered against them in the wrongful death action, the Adkinsons sought to recover compensatory and punitive damages for injuries directly suffered.[3]

Rossi, joined by Mountain View, moved for summary judgment. The third-party

---

1. We further noted that:

   The Adkinsons also testified that Adkinson was very careful in the use of weapons, would never point a gun at another person, and had never done so. On rebuttal, the prosecution offered the testimony of two witnesses who described two separate incidents when Adkinson pointed a gun at suspected trespassers on his land.

   611 P.2d at 531.

2. An additional third-party defendant, Garcia Corporation, was dismissed from the case and is no longer a party.

3. The Adkinsons alleged that they had sustained damages which included emotional pain and suffering, humiliation and embarrassment, loss of enjoyment of life, loss of time and legal costs incurred in defending the civil and criminal actions, and loss of earnings due to James Adkinson's incarceration.

defendants claimed that Adkinson was precluded under the doctrine of collateral estoppel from denying that he had proximately caused Steven Butts' death, that Adkinson was not entitled to contribution since Adkinson had intentionally assaulted Steven Butts and thereby caused Butts' death, and that Adkinson was not entitled to recover for personal damages which resulted from his own criminal acts. In opposition to the motion, the Adkinsons took the position that summary judgment was inappropriate since there remained genuine issues of fact regarding the existence of a defect in the shotgun and the extent to which this defect may have caused Steven Butts' death and thereby contributed to the losses suffered by Adkinson.[4]

The superior court denied that portion of Rossi and Mountain View's motion for summary judgment which sought to dismiss the Adkinson's claim for contribution towards any recovery regarding the wrongful death claim. The Adkinsons' indemnity claim was dismissed since they had not opposed summary judgment as to this facet of the case.[5] In addition, the superior court granted partial summary judgment to Rossi and Mountain View with respect to the Adkinsons' direct claim for personal damages. In this regard the superior court's order reads:

> Insofar as third-party defendants' Motion for Summary Judgment applies to third-party plaintiff's direct claim for personal damages from third-party defendant, such Motion for Summary Judg-

ment is GRANTED. The alleged damages to third-party plaintiff were brought about by his own acts. The alleged defect in the weapon made and sold by third-party defendants could not be construed as the proximate cause of third-party plaintiff's damages.

■ The superior court subsequently denied the Adkinsons' motion for reconsideration and entered judgment for Rossi and Mountain View on the Adkinsons' direct claim for personal damages as well as their claim for indemnification. The superior court directed the entry of a final judgment as to these claims, finding pursuant to Civil Rule 54(b) there was no just reason for delay of entry of a final judgment.[6] The Adkinsons appeal only from the entry of summary judgment dismissing their direct claims for damages. We affirm.

Our analysis of the issues presented in this appeal leads us to the conclusion that we need to discuss only two of the grounds which have been advanced by Rossi and Mountain View in support of the superior court's decision. More particularly, we think appellees' arguments that they owed no duty as either a manufacturer or distributor of firearms to protect the Adkinsons from the consequences of James Adkinson's own intentional criminal conduct, and that public policy prohibits the shifting of the consequences of James Adkinson's criminal conduct, are dispositive of this appeal.

---

4. The Adkinsons conceded that they were not entitled to full indemnification from Rossi and Mountain View in light of this court's affirmance of James Adkinson's conviction for manslaughter. They continue to assert, however, that they are entitled to contribution and/or partial recovery for any wrongful death judgment and for their own direct losses.

5. Neither party has appealed from these rulings, thus they are not at issue in this appeal. The superior court order of May 18, 1981, provided, in part, as follows:
   > Insofar as third-party defendants' Motion for Summary Judgment applies to third-party plaintiff Adkinsons' claim for contribution, such motion is DENIED. AS 09.16.010(c) does not apply in this case. That statute requires specific intent on the part of the

tort-feasor to inflict the injury. Although third-party plaintiff Adkinson has been convicted of manslaughter, his alleged specific intent to cause injury was not necessarily decided by the criminal trial jury under the instructions given it by the court.
   > . . . .
   > Further, third-party plaintiff Adkinsons did not oppose third-party defendants' Motion for Summary Judgment on the issue of indemnification. Therefore, said motion on this issue is GRANTED.

6. Our review of the record has persuaded us that the superior court did not abuse its discretion under Alaska R.Civ.P. 54(b) in finding no just reason for delay and in directing the entry of final judgment. *Johnson v. State,* 577 P.2d 706, 710–11 (Alaska 1978).

In *D.S.W. v. Fairbanks North Star Borough School District,* 628 P.2d 554, 555 (Alaska 1981), we had occasion to discuss factors which this court will consider in determining whether an actionable duty of care exists under particular circumstances. In our discussion we approved the criteria and analysis employed by the court in *Peter W. v. San Francisco Unified School District,* 60 Cal.App.3d 814, 131 Cal.Rptr. 854 (Cal. App.1976). There the court considered the following factors in deciding whether an actionable duty of care existed in a particular case:

> "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." [7]

■ Application of these criteria, as well as considerations of public policy, lead us to conclude that neither Rossi nor Mountain View owed a legal duty to the Adkinsons to protect them from James Adkinson's intentional criminal conduct.[8] Our decision is based on the following considerations. First, the Adkinsons' asserted personal losses were not foreseeable.[9] While Rossi and Mountain View could have anticipated that a defect in the shotgun would have resulted in someone being shot, it is not readily foreseeable that the shooter will unlawfully and intentionally point the firearm and be convicted of manslaughter because of such acts on his part. Second, lacking in any significant degree is a "closeness of ... connection" between the conduct of Rossi or Mountain View and the personal damages allegedly sustained by the Adkinsons.[10] Third, James Adkinson was convicted of a serious criminal offense, manslaughter, and received a ten year prison sentence.[11] Any "moral blame" attaching to the conduct of Rossi or Mountain View is of a significantly lesser degree than that which society assigns to James Adkinson's commission of a homicide. Fourth, the policy of preventing future harm is not advanced by imposing a duty on either Rossi or Mountain View to protect the Adkinsons from criminal conduct on the part of James Adkinson. Allowance of a civil recovery in the particular factual circum-

---

7. *Peter W. v. San Francisco Unified School Dist.,* 60 Cal.App.3d 854, 131 Cal.Rptr. 854, 859–60 (Cal.App.1976), *quoting Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 564 (Cal.1968).

8. In the superior court, the Adkinsons conceded that the jury in James Adkinson's criminal trial necessarily found that he had intentionally pointed the shotgun towards Butts.

9. The law of negligence protects only from foreseeable risks of harm. *State v. Guinn,* 555 P.2d 530, 536 (Alaska 1976).

10. In this regard, counsel for Rossi cogently argued, in part, that:

> [T]here is no certainty the Adkinsons suffered injury legally caused by a defect. The prosecution and death claim were based on James Adkinson's own wrongdoing. The Adkinsons' alleged personal losses directly arise out of a variety of independent agencies not controlled by Rossi: James Adkinson's criminal conduct, the trooper's investigation, the Department of Law's prosecution, the grand jury's indictment, the trial jury's verdict, the

trial court's rulings and sentence, the decision of this court on appeal, denial of certiorari by the United States Supreme Court, denial of writ of habeas corpus by the United States District Court, and the decision of the personal representative of Steven Butts' estate to sue James Adkinson. The Adkinsons' personal losses are "necessarily incapable of assessment." *D.S.W.,* 628 P.2d at 556.

> There is no connection between an alleged defect and the Adkinsons' alleged personal losses. Any conceivable connection must be considered remote, and obliterated by the independent, intervening forces of the criminal process. Any personal losses of the Adkinsons are so remote from Rossi's alleged responsibility that the legal cause of those losses is "an imponderable which is beyond the ability of courts to deal with in a reasoned way." *D.S.W.,* 628 P.2d at 556.

11. The jury found James Adkinson guilty of manslaughter (AS 11.15.040), and further returned a verdict of not guilty of negligent homicide (AS 11.15.080).

stances of this record would have the effect of minimizing the criminal significance of James Adkinson's conduct and would be contrary to public policy.[12] Fifth, analysis and application of "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach" militates against a holding that the Adkinsons have a claim for personal damages against either Rossi as manufacturer of the firearm or Mountain View as distributor. Imposition of such a duty would in our view have detrimental consequences for society as a whole. Here, considerations of public policy mandate that the Adkinsons' arguments for imposition of a duty be rejected. Finding that the appellees owed a duty to the Adkinsons would tend to denigrate James Adkinson's personal responsibility for his criminal conduct and would have the effect of compensating James Adkinson for the consequences of an intentional homicide, ultimately transfering the costs involved to the public.[13]

Furthermore, allowing a criminal defendant, who has been convicted of an intentional killing, to impose liability on others for the consequences of his own anti-social conduct runs counter to basic values underlying our criminal justice system. The goals of general deterrence as well as individual deterrence would undoubtedly be undercut. Obviously, other sanctions and goals of the criminal justice system are implicated. In our view, allowance of the action sought to be maintained by the Adkinsons would erode the societal norms referred to in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

■ The jury which heard James Adkinson's criminal case concluded beyond a reasonable doubt that Adkinson was guilty of manslaughter on the basis of his own intentional conduct. The responsibility for any resultant "personal losses" rest solely with the Adkinsons.[14] Thus, we conclude that under the criteria of *D.S.W.* and in light of strong public policy considerations, one convicted of an intentional killing does not have a claim for relief against either the manufacturer of the firearm used in the killing, or the distributor of the firearm, for direct personal losses.[15]

**12.** The public policy aspects of this appeal will be addressed in more detail subsequently.

**13.** In *Wilson v. City of Kotzebue,* 627 P.2d 623, 631 (Alaska 1981), we held that a plaintiff's intentional conduct which results in injury to himself will bar any recovery against a merely negligent defendant whose conduct also contributed to the plaintiff's injury.

**14.** Compare *Cole v. Taylor,* 301 N.W.2d 766 (Iowa 1981) (plaintiff prohibited from recovering in tort from her psychiatrist on claim that he negligently failed to prevent her from committing murder); *Tovar v. Paxton Community Memorial Hospital,* 29 Ill.App.3d 218, 330 N.E.2d 247 (Ill.App.1975) (public policy prevented physician who was not licensed to practice in Illinois from suing employer-hospital for misrepresentation, when alleged misrepresentation was that his credentials were satisfactory to hospital). *See generally Snug Harbor Packing Co. v. Schmidt,* 394 P.2d 397, 399 (Alaska 1964) (stating general rule that court will refuse to aid party whose claim is based upon his own illegal act); *Farragut Baggage & Transfer Co. v. Shadron Realty Inc.,* 18 Ariz. App. 197, 501 P.2d 38 (Ariz.App.1972) (plaintiff precluded from recovery on cause of action resting in part on admission that he performed an illegal act).

**15.** The Adkinsons rely heavily on *Transamerica Title Ins. Co. v. Ramsey,* 507 P.2d 492 (Alaska 1973), to support their personal damage claim. In *Ramsey,* the plaintiff brought an action against a title insurance company alleging that the company had negligently failed to inform the plaintiff that her power of attorney had been revoked, and that she was no longer authorized to sell the property owned jointly by the plaintiff and her ex-husband. We held that the plaintiff could recover damages for a lawsuit which arose as a result of the invalid sale of the property since the sale might not have occurred if the plaintiff had been advised of the revocation. *Id.* at 497. The Adkinsons claim their case is analogous since they seek to recover for the costs and expenses of the criminal action and conviction against James Adkinson, an action which allegedly would not have occurred but for the defective shotgun. Since the plaintiff in *Ramsey* was allowed to recover even though her own acts (sale of the property) led to her being sued, the Adkinsons claim that they should be allowed to recover despite the fact that the criminal action was the result of James Adkinson's conduct.

The Adkinsons' reliance on *Ramsey* is not persuasive. The distinguishing factor is that the plaintiff in *Ramsey* was an innocent party.

Affirmed.[16]

CONNOR, J., not participating.

On the other hand, it was James Adkinson's own criminal conduct which led to the losses suffered by the Adkinsons. *Ramsey* simply is not on point, and the Adkinsons have failed to cite any authority for the proposition that a plaintiff may recover for personal losses stemming from the plaintiff's own criminal conduct.

**16.** Our holding makes it unnecessary to address any of the other issues raised in this appeal. Implicit in our resolution of this case is the conclusion that there were no genuine issues of material fact which would have precluded the superior court from entering summary judgment.