John J. SHAW, Petitioner,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, Public Defender Agency, and David C. Backstrom, Respondents.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, Public Defender Agency, and David C. Backstrom, Petitioners,

v.

John J. SHAW, Respondent.

Nos. S-4933, S-5010.

Supreme Court of Alaska.

Oct. 8, 1993.

---

Joseph L. Paskvan, Hoppner & Paskvan, Fairbanks, for petitioner-respondent John J. Shaw.

Randy M. Olsen, Asst. Atty. Gen., Fairbanks, Charles E. Cole, Atty. Gen., Juneau, for respondents-petitioners State of Alaska, Dept. of Admin., Public Defender Agency, and David C. Backstrom.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

These petitions raise several questions arising out of a legal malpractice action brought by a criminal defendant against his attorney. First, we address at what time prejudgment interest in a legal malpractice action brought against a criminal defense attorney begins to accrue. Second, we address the question whether innocence or actual guilt of the plaintiff in the legal malpractice action is relevant. If so, we must further decide who bears the burden of proof on the issue. We address these issues in turn.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The long and complex factual and procedural background in this case is set out in *Shaw v. State*, 816 P.2d 1358 (Alaska 1991) (*Shaw I*). We limit this opinion to summarizing the dates and events relevant to the questions raised by these petitions: (1) Shaw was convicted of two counts of burglary and two counts of larceny in 1973; (2) upon apprehension after fleeing the state, Shaw was sentenced for the 1973 convictions in 1980; (3) on August 15, 1986, Shaw's convictions were set aside as "constitutionally defective;" and (4) Shaw filed a legal malpractice claim against his attorney and the Public Defender's office on January 13, 1988. *Id.* at 1359–60. Finally,

in *Shaw I* we held that the statute of limitations as to legal malpractice arising out of criminal proceedings does not begin to run until after the criminal defendant obtains post-conviction relief. *Id.* at 1362.

Subsequently both parties moved to establish the law of the case on different issues: Shaw moved for a statement of law regarding when prejudgment interest accrues, and the State moved to establish the law of the case concerning, among other things, the elements to be proven at trial and the accompanying burdens of proof.

In response to Shaw's motion, the superior court found that the legal malpractice cause of action accrued upon Shaw's obtaining post-conviction relief. Therefore, under AS 09.30.070, prejudgment interest commences upon service of the complaint. In response to the State's motion, the superior court held that, as the State acknowledged both duty and breach of duty, Shaw's only burden at trial was to prove the proximate causal connection between his counsel's negligent defense at trial and his claimed damages. The superior court further ruled that at trial the State had the burden of proving, by a preponderance of the evidence, the affirmative defense that Shaw was actually guilty of the original charges.

Shaw petitioned for review of the court's ruling concerning the time at which prejudgment interest accrues and the State petitioned for review of the ruling establishing the law of the case as to the parties' respective burdens at trial. We AFFIRM.

## II. *DISCUSSION*[1]

### A. At What Time Does Prejudgment Interest in a Legal Malpractice Action Brought Against a Criminal Defense Attorney Begin to Accrue?

 In order to determine when prejudgment interest begins to accrue, we must determine when Shaw's cause of action arose. *State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970) ("All damages ... should carry interest from the time the cause of action accrues...."). We have consistently held in the context of civil judgments that "a cause of action accrues when all the essential elements forming the basis for the claim have occurred." *Lamoreux v. Langlotz*, 757 P.2d 584, 585 (Alaska 1988) (citations omitted). Thus, the question is when did all the essential elements forming the basis of Shaw's claim accrue.

In *Shaw I*, we held that "obtaining post-conviction relief is an element of legal malpractice in criminal cases." 816 P.2d at 1360 n. 2. It is clear, then, that all the essential elements of Shaw's legal malpractice claim did not accrue until he obtained post-conviction relief on August 15, 1986.[2] In regard to prejudgment interest, the legislature has provided that all causes of action that accrue after June 11, 1986 are subject to AS 09.30.070. Ch. 139, § 9, SLA 1986. The statute provides, in part:

(b) Except when the court finds that the parties have agreed otherwise, prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier.

AS 09.30.070(b). As no written notice was provided to the defendant, prejudgment interest began to accrue on January 15, 1988, when the complaint was served.

### B. Is the Innocence of a Former Criminal Defendant Who Sues His Defense Attorney for Malpractice Relevant?

 We have not previously addressed the relevance of a criminal defendant's in-

---

**1.** Both issues in this case concern questions of law. We review questions of law *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (citations omitted).

**2.** "Professional malpractice consists of four elements: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.'" *Belland v. O.K. Lumber Co., Inc.*, 797 P.2d 638, 640 (Alaska 1990) (quoting *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n. 4 (Alaska 1983)).

nocence to that defendant's subsequent malpractice claim against his former defense attorney. A survey of case law from other states indicates that this area of criminal malpractice constitutes a small but growing percentage of legal malpractice cases. 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 21.1, at 284 n. 4 (3d ed. 1989). In cases that have addressed the issue of a criminal defendant's guilt, the vast majority of courts have held that innocence or the actual guilt[3] of the criminal defendant is relevant.[4] Before deciding whether to join the majority of courts on this issue, we first address the question of whether the civil arena even allows such an inquiry to be made. We think that it does. In so holding, we base our decision on the different purposes and goals of the criminal and civil justice systems.

■ It is indisputable that a primary goal, perhaps the paramount goal, of the criminal justice system is to protect the innocent accused against an erroneous conviction. Our society has made "a funda-

mental value determination ... that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 1077, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); *see also State v. Alto*, 589 P.2d 402, 406 (Alaska 1979) ("[P]lacing the burden of proof on the state beyond a reasonable doubt in criminal cases reflects our belief that it is worse tha[t] an innocent man be jailed than that a guilty man go free."). This value determination is evidenced by the array of protections provided an accused by the United States Constitution and the Alaska Constitution. When the state brings its power as a prosecuting authority to bear on an individual, the Constitutions protect the accused by imposing carefully crafted limitations[5] on the state's ability to prosecute.[6]

Few would dispute that reliable factfinding is also a significant goal of both the criminal and the civil systems. In both arenas, courts seek the truth concerning the events in dispute. In the criminal sys-

---

**3.** We make a distinction in this case between the "actual" guilt or innocence of a defendant and the "legal" guilt or innocence of a defendant. "Legal" guilt or innocence is that determination made by the trier of fact in a criminal trial. Thus a defendant found "legally" guilty has been found guilty beyond a reasonable doubt by a jury of his peers in a criminal adjudication. "Actual" guilt is intended to refer to a determination in a civil trial, by a preponderance of the evidence, that the defendant engaged in the conduct he was accused of in the prior criminal proceeding. *See also Glenn v. Aiken*, 409 Mass. 699, 569 N.E.2d 783, 789 (1991) (Liacos, C.J., concurring) ("A criminal trial is an adjudication of a defendant's legal guilt. As a result, a jury verdict does not address necessarily the issue of a defendant's actual guilt. Two examples suffice to make the point. A defendant who committed the crime may be acquitted if the jury, based on the evidence introduced by the prosecution, had a reasonable doubt as to the defendant's legal guilt. Or alternatively, a defendant may be acquitted because evidence of guilt is suppressed due to it being tainted by some constitutional violation by law enforcement personnel.").

**4.** John M. Burkoff, *Criminal Defense Ethics* § 3.1(c), at 3–11 (1992); *see also Glenn v. Aiken*, 409 Mass. 699, 569 N.E.2d 783, 788 (1991) (in order to recover for attorney malpractice, plaintiff must prove by a preponderance of the evi-

dence that he is innocent of the crime charged); *Carmel v. Lunney*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 607, 511 N.E.2d 1126, 1128 (1987) (unless a plaintiff can assert his innocence, "public policy prevents maintenance of a malpractice action against his attorney"); *Bailey v. Tucker*, 533 Pa. 237, ——, 621 A.2d 108, 113 (1993) (plaintiff must prove that he is innocent of the crime charged or any lesser included offense).

**5.** Such protections include the right to the assistance of an attorney, the right to a speedy trial, the right to a jury trial, the privilege against self-incrimination, and the prohibition against double jeopardy. *See Brinegar v. United States*, 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (noting that "[t]hese rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty, and property").

**6.** In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court recognized the protective role of the Constitution, noting: "The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling. Indeed, the host of safeguards fashioned by this Court over the years to diminish the risk of erroneous conviction stands as a testament to that concern." *Id.* at 78, 105 S.Ct. at 1093.

tem, however, the goal of reliable factfinding and the goal of protecting the innocent accused may conflict.[7]

When these two goals conflict, it is the goal of reliable factfinding that must give way to the paramount goal of protecting the innocent accused. As Lafave and Israel noted:

> Reliable factfinding, as a goal in itself, would seek to ensure equally the accuracy of both guilty verdicts and nonguilty verdicts. Protection of the innocent, however, places greater priority on the accuracy of the guilty verdict. It reflects a desire to minimize the chance of convicting an innocent person even at the price of increasing the chance that a guilty person may escape conviction.

1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 1.6(c), at 45 (1984).[8]

Thus, the criminal system resolves the conflict between protecting the innocent accused and reliable factfinding by choosing to err on the side of ensuring the accuracy of guilty verdicts. In order to ensure accuracy, the criminal trial is limited by the protections the Constitutions provide to determining the defendant's guilt beyond a reasonable doubt. Consequently, at times the determination of the truth in a particular case is subsumed in order to fulfill the goal of protecting the innocent.

 In the civil system, however, the same conflict does not arise because the goal of protecting an innocent accused is no longer paramount. The protective barriers provided an accused by our state and federal case law and Constitutions are no longer applicable, and thus we are not confined to a determination of the plaintiff's guilt beyond a reasonable doubt. However, as noted above, the determination that the civil arena allows inquiry into innocence or the actual guilt of the plaintiff does not end our inquiry. Simply because we are not prevented in the civil system from determining innocence or the actual guilt of the plaintiff does not resolve the question of whether innocence or the actual guilt of the plaintiff is relevant in a malpractice suit against his former defense attorney. We conclude that it is.

 If a plaintiff in a criminal malpractice action against his former defense attorney has engaged in the criminal conduct he was accused of in the criminal trial, public policy prevents recovery on his part. We have previously held that civil recovery should not be a tool for shifting an individual's responsibility for the individual's criminal acts. This principle is applicable to the case at hand.

In *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236, 1240 (Alaska 1983), we held that a plaintiff who had been convicted of manslaughter for killing a victim with a shotgun could not bring a tort action against the manufacturer and seller of the gun for personal losses suffered as a result of imprisonment allegedly resulting from a defect in the gun. We stated that "allowing a criminal defendant, who has been convicted of an intentional killing, to impose liability on others of the consequences of his own anti-social conduct runs counter to ba-

---

7. We have previously noted this conflict, quoting Justice Black's observation:
 > A criminal trial is in part a search for truth. But it is also a system designed to protect "freedom" by insuring that no one is criminally punished unless the State has first succeeded in the admittedly difficult task of convincing a jury that the defendant is guilty.... The Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in "efficiency" that resulted.

 *McCracken v. Corey*, 612 P.2d 990, 996 n. 15 (Alaska 1980) (quoting *Williams v. Florida*, 399 U.S. 78, 113–14, 90 S.Ct. 1893, 1912, 26 L.Ed.2d 446 (1970) (Black, J., concurring and dissenting)).

8. Justice Harlan also discussed the different views held concerning the effects of erroneous outcomes in the civil and criminal systems. *In re Winship*, 397 U.S. at 370–72, 90 S.Ct. at 1075–77 (Harlan, J., concurring). He noted that in a civil suit for money damages, "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor.... In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty." *Id.* at 371–72, 90 S.Ct. at 1076, *quoted in Alto*, 589 P.2d at 406–07 n. 16.

sic values underlying our criminal justice system." *Id.* We relied on *Adkinson* in *Lord v. Fogcutter Bar*, 813 P.2d 660 (Alaska 1991), to hold that a drunken customer who was served alcohol by a bar in violation of the dram shop statute and who subsequently committed a felony could not recover from the bar for damages he suffered as a result of his imprisonment. *Id.* at 663.

■■■ *Adkinson* and *Lord* differ from the present case in that both plaintiffs claimed that the defendants were in some way responsible for the criminal acts committed by the plaintiffs, whereas in a malpractice suit the plaintiff is not claiming that the attorney contributed to the plaintiff's criminal act. The cases are the same, however, in that the claimed injury or consequence is the same: The plaintiff claims that were it not for the negligent action of another, he would not have been subjected to imprisonment. As we did in *Adkinson* and *Lord,* we hold that if plaintiffs engaged in the criminal conduct they are accused of, then they alone should bear full responsibility for the consequences of their acts, including imprisonment. Any subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. *Cf. Wilson v. City of Kotzebue*, 627 P.2d 623, 631 (Alaska 1981) (holding that a plaintiff's intentional conduct that results in injury to himself will bar any recovery against a merely negligent defendant whose conduct also contributed to the plaintiff's injury).

■■■ In cases holding that innocence or the actual guilt of the plaintiff is relevant, the majority of courts place the burden on the plaintiff to prove his actual innocence. Although we conclude that innocence or the actual guilt of the plaintiff is relevant, we decline to place the burden of proving actual innocence on the plaintiff. We have already burdened a criminal defendant bringing a malpractice action against his defense attorney by requiring the additional element of first obtaining post-conviction relief. Rather than require the plaintiff to prove his actual innocence in order to succeed, we hold that the defendant may raise the issue of the plaintiff's actual guilt as an affirmative defense.[9] The attorney, or in this case the State, as the party raising the affirmative defense, will thus have the burden of proof by a preponderance of the evidence as to the actual guilt of the plaintiff.[10] *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 294 (Alaska 1976) ("The party raising the affirmative defense generally bears the burden of proof as to that issue.").

■■■ Shaw has established the first two elements of the four elements required for a legal malpractice claim as well as the additional element of post-conviction relief necessary for a legal malpractice claim arising out of a prior criminal matter. The two remaining elements are causation and damages.[11] In order to prove causation, Shaw must establish by a preponderance of the evidence that "but for" the attorney's negligent misrepresentation, the criminal jury would have returned a more favorable verdict. Thus, Shaw will have to prove a jury would not have found him guilty of the charged conduct beyond a reasonable doubt.

---

**9.** *See Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim....").

 In designating guilt-in-fact as an affirmative defense, we note its similarity to other affirmative defenses. The traditional defenses of contributory/comparative negligence and assumption of the risk both look to the plaintiff's actions. Each defense asks how plaintiffs might be responsible for their own injuries. Guilt-in-fact has the same focus. In other words, if plaintiffs actually engaged in criminal conduct, then they are partially responsible (and more culpable) for their own resulting injuries (such as incarceration). Under these circumstances, the plaintiff's own conduct precludes his or her recovery, just as with other conventional defenses.

**10.** Since we have recognized an affirmative defense in this opinion, the State has the option of amending its pleading to allege such a defense.

**11.** The issue of damages is not currently before this court.

■ In order to prove he would have been found innocent at trial on the original charges, Shaw, as most civil malpractice plaintiffs, will have to present a "trial within a trial." [12] In the context of a legal malpractice action arising out of a prior criminal proceeding, the standard of proof will be a complex one, in essence, a standard within a standard. Shaw must prove by a preponderance of the evidence that, but for the negligence of his attorney, the jury could not have found him guilty beyond a reasonable doubt. In so proving his legal innocence, Shaw is limited by the procedural and evidentiary rules applicable in criminal proceedings and trials. That is, Shaw may prove his legal innocence only through the use of evidence and witnesses that would have been admissable if presented at his criminal trial.

■ If the State pleads the affirmative defense of Shaw's actual guilt, its burden of proof will be by a preponderance of the evidence. In order to prove Shaw's actual guilt, the State is not limited to evidence admissable at the criminal trial to prove Shaw's guilt beyond a reasonable doubt. As discussed above, the justifications supporting the rules of procedure and evidence applicable in the criminal setting are not present in the civil arena. Thus "evidence of guilt should not be limited to that introduced in the underlying prosecution." *Sullivan v. Wiener*, 1989 WL 65163, at *1 (N.D.Ill. June 5, 1989). "Such evidence can include any and all confidential communications, as well as otherwise suppressible evidence of factual guilt." *Bailey*, 533 Pa. at 237 n. 12, 621 A.2d at 115 n. 12.

### III. *CONCLUSION*

We AFFIRM the superior court's determination that prejudgment interest in Shaw's criminal malpractice action did not begin to accrue until Shaw obtained post-conviction relief and served the complaint.

We hold that innocence or the actual guilt of a former criminal defendant is relevant in a subsequent malpractice claim against his defense attorney. We thus AFFIRM the superior court's determination that a former criminal defense attorney can raise the plaintiff's actual guilt as an affirmative defense against a malpractice action brought by a former criminal defendant, and that the defense attorney's burden of proof as to this affirmative defense will be a preponderance of the evidence.

COMPTON, Justice, dissenting in part.

This court has held that the guilt of a defendant in a criminal proceeding is relevant in a civil malpractice suit brought by the defendant against his or her former defense attorney. In *Shaw v. State*, 816 P.2d 1358 (Alaska 1991) (*Shaw I*), we held that "a convicted criminal defendant must obtain post-conviction relief before pursuing an action for legal malpractice." *Id.* at 1360. Therefore only a defendant who is not guilty of the offense charged, by virtue of having had his or her conviction set aside, can maintain a civil malpractice suit. The court now adds further limitations, including creation of a new concept of criminal guilt, guilt by a preponderance of the evidence. The court calls this "actual" guilt. The court then penalizes "actually" guilty plaintiffs by denying them the ability to recover civil damages resulting from their former defense attorney's proven negligence.

The court holds that Shaw, in order to maintain a civil suit against his former defense attorney for malpractice allegedly occurring in the criminal proceeding, must establish: (a) that the conviction has been set aside; (b) duty; (c) breach of duty; (d) causation; and (e) damages.

---

**12.** The "trial within a trial" is discussed by Mallen and Smith in their treatise on malpractice:

[The elements of the legal malpractice action] are traditionally handled by having a trial within a trial, the goal of which is to determine what the result of the underlying proceeding or matter *should have been*. For example, when the error relates to the failure to offer or exclude evidence in the underlying action, the trier of fact must determine what effect the absence or presence of the evidence had and determine what the "new" result should have been. The trial judge must decide issues of law which were not previously urged or adequately briefed.

Mallen & Smith, *supra*, § 27.1, at 624.

In regard to causation, the court remarks that Shaw "must establish by a preponderance of the evidence that 'but for' the attorney's negligent misrepresentation, the criminal jury would have returned a more favorable verdict." He "will have to prove a jury would not have found him guilty of the charged conduct beyond a reasonable doubt ... to prove he would have been found innocent at trial on the original charges...." "In so proving his legal innocence," [Shaw will be] limited by the procedural and evidentiary rules applicable in criminal proceedings and trials and "may prove his innocence only through the use of evidence and witnesses that would have been admissible if presented at his criminal trial." [1] Op. 572–573.

If Shaw proves all the above, his former defense attorney may then prove, by a preponderance of the evidence, the affirmative defense of Shaw's "actual" guilt. The former defense attorney will not be limited to presenting evidence admissible at the criminal trial. Evidence may include confidential communications and otherwise suppressible evidence of "actual" guilt.

The burdens imposed on these plaintiffs, coupled with the advantage given former defense attorneys, virtually forecloses attorney malpractice suits arising out of criminal representation. No public policy, nor any case law, can justify this result. I am unpersuaded by arguments in support of these further limitations, and therefore dissent.

## I.

The court's limited summary of the underlying facts of this case does not convey the essence of Shaw's claim. Shaw and Toney Powell were arrested and charged with stealing seventeen pairs of pants from a mens' store where they both worked as janitors. Both Shaw and Powell were represented by the same assistant public defender (PD). The PD advised the court that a "conflict situation" was arising. However, separate attorneys for Shaw and Powell were never provided.

> Powell was willing to testify that Shaw had nothing to do with the theft but defense counsel did not permit him to do so. Further, [defense counsel] did not advise Shaw that he could take the stand in his own defense, because he wanted to protect Powell. Additionally, several witnesses at trial were not allowed to testify as to statements by Shaw because of the threat to Powell.

*Id.* at 1359. Powell and Shaw were both convicted.

Shaw failed to appear for sentencing and was arrested in 1979 for failure to appear. After sentencing on the original charge, and while appealing his failure to appear conviction, Shaw was arrested and pled *nolo contendere* to being a felon in possession of a handgun. *Id.* at 1360. Shaw served time in prison from December 1979 until March 1980 on the original conviction, from December 1981 until September 1982

---

**1.** It is not possible to reconcile this discussion of causation with the court's discussion of causation in *Shaw I.* One justification advanced in *Shaw I* for requiring a defendant to obtain post-conviction relief as a prerequisite to maintenance of a civil malpractice suit against former defense counsel was that

> post-conviction relief promotes judicial economy because many issues litigated in the quest for post-conviction relief will be duplicated later in the legal malpractice action. This is because dispositive post-conviction relief is relevant to the issue of *proximate causation.*

*Shaw,* 816 P.2d at 1361 (citation omitted) (emphasis added). In a footnote to the citation, the court remarks:

> The burden of proof in the two proceedings is similar. In obtaining post-conviction relief for ineffective assistance of counsel, defen-

dant must show "that his lawyer's skill ... fell below that of a lawyer with ordinary skill and training in the criminal law, and ... that this defective performance contributed in some way to his conviction." *Larson v. State,* 614 P.2d 776, 780 (Alaska 1980). In a post-conviction relief proceeding the petitioner must prove by a preponderance of the evidence all facts necessary to overturn the prior judgment of conviction. *Merrill v. State,* 457 P.2d 231, 234 (Alaska 1969), *rev'd on other grounds, Donnelly v. State,* 516 P.2d 396 (Alaska 1973).

Unless successful post-conviction relief based on the ineffective assistance of counsel satisfies the causation element of the civil malpractice suit, there will be no promotion of judicial economy, and that justification for requiring post-conviction relief evaporates.

on the failure to appear charge, and from October 1985 until September 1986 on the felon in possession charge.

On August 15, 1986, the superior court set aside Shaw's 1973 convictions because they were *constitutionally* defective. *Id.* (emphasis added). In order to obtain post-conviction relief based on ineffective assistance of counsel, Shaw had to show "that his lawyer's skill ... fell below that of a lawyer with ordinary training and skill in the criminal law, and second, that this defective performance contributed in some way to his conviction."

*Id.* at 1361 n. 4 (quoting *Larson v. State,* 614 P.2d 776, 780 (Alaska 1980)). All time served was traceable to the original conviction.

## II.

Alaska is already part of the "majority" of courts that hold innocence relevant in a civil malpractice suit arising out of a criminal proceeding. The court cites John M. Burkoff, *Criminal Defense Ethics* § 3.1(c), at 3–11 (1992), as authority for its proposition that "a vast majority of courts have held that innocence or actual guilt of the criminal defendant is relevant." 2 R. Mallen & J. Smith, *Legal Malpractice* § 21.3 at 80 (3d ed. 1992), voices a similar conclusion. Both already have included Alaska as part of this "majority" of courts which hold guilt or innocence relevant in the civil malpractice suit, because of our decision in *Shaw I.*[2]

In *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556 (1993), the Oregon Supreme Court adopted a requirement of post-conviction relief or some other exoneration of the underlying offense. The *Stevens* court cited *Shaw,* along with *Carmel v. Lunney,* 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987), and *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783 (1991), as the "leading cases that require successful post-conviction relief proceedings, or some other allegation of innocence of the underlying charge." 851 P.2d at 562.

However, the court mischaracterizes the "majority" which considers guilt or innocence relevant, because other jurisdictions which require proof of innocence by the plaintiff in the civil malpractice suit do not necessarily require post-conviction relief in the criminal proceeding. In *Carmel,* 518 N.Y.S.2d at 606, 511 N.E.2d at 1127, plaintiff's conviction in the criminal proceeding had not been successfully challenged prior to the civil malpractice suit. In *Glenn,* 569 N.E.2d 783, the plaintiff was required to prove innocence by a preponderance of the evidence, but post-conviction relief was held to be a prerequisite to recovery. Pennsylvania, on the other hand, is in the "minority," requiring not only post-conviction relief and proof of innocence, but also a showing of reckless or wanton disregard of the plaintiff's interest, before the former criminal defendant can recover. *Bailey v. Tucker,* 533 Pa. 237, ——, 621 A.2d 108, 114 (1993).[3]

Until today people of the State of Alaska were considered innocent of crime unless and until found guilty beyond a reasonable doubt in a criminal proceeding. The court now makes a distinction between the "actual" guilt and the "legal" guilt of a criminal defendant. What heretofore has been simply called guilt is now called "legal" guilt. Op. 570 n. 3. "Actual" guilt, on the other hand, becomes a determination in a civil trial, by a preponderance of the evidence, that the civil plaintiff engaged in the criminal conduct of which he or she was accused in a criminal proceeding. I suggest that the affirmative defense of "actual" guilt,

---

**2.** It seems redundant for this court to now claim it is aligning itself with a "majority" of courts of which it is already a part.

**3.** A number of courts do not require either post-conviction relief or innocence as elements of a civil malpractice case. *See Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989) (holding post-conviction relief is not an element of legal malpractice action arising from criminal representation); *Schlumm v. Terrence J. O'Hagam, P.C.,* 173 Mich.App. 345, 433 N.W.2d 839 (1988) (holding that the trial court erred in ruling that the plaintiff must plead and prove his innocence).

proven by a preponderance of the evidence, has no place in our jurisprudence.[4]

Our criminal justice system enables the state to bring its tremendous prosecuting resources and authority to bear on an individual. Thus the system contains numerous safeguards to protect the individual. These safeguards, both constitutional and procedural, include the right to the assistance of an attorney, the right to a speedy trial, the right to a jury trial, the privilege against self-incrimination and the requirement of proof beyond a reasonable doubt. "These rules are historically grounded rights of our system, developed to safeguard men [and women] from dubious and unjust convictions, with resulting forfeitures of life, liberty, and property." *Brinegar v. United States*, 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). These safeguards enable us to be more certain that when we label someone "guilty," we can be reasonably confident that they are in fact guilty. However, they are guilty of the *crime* charged. The court now abolishes the safeguards that ensure this degree of accuracy and brands a person "actually" guilty of a crime, if a trier of fact decides it is more probably true than not that the person committed the crime originally charged.

The court justifies adjudication of "actual" guilt on the basis of distinctions between criminal and civil proceedings. It makes the astonishing assertion that "a primary goal, perhaps the paramount goal, of the criminal justice system is to protect the innocent accused against erroneous conviction." Op. at 570. It then notes that while reliable fact finding is a goal of both proceedings, "[i]n the criminal system ... the goal of reliable factfinding and the goal of protecting the innocent accused may conflict." Op. at 571. (Footnote omitted). In that case, reliable factfinding must give way to protecting the innocent accused, and "the determination of the truth ... is subsumed in order to fulfill the goal of protecting the innocent." Op. at 571.

There being no such conflict in the civil system, the former defendant does not have the constitutional and procedural safeguards afforded in a criminal proceeding, including proof beyond a reasonable doubt. Thus we can adjudicate "actual" guilt.

If a conviction is set aside because of the ineffective assistance of counsel, and proceedings against a defendant dismissed, was the conviction erroneous? Has the goal of protecting an innocent accused been achieved? Is the defendant innocent of the crime for which he or she was charged? The answer in each instance is "yes." A judicial determination of whether the defendant is guilty of the crime originally charged has been completed.

The court denigrates the criminal justice system by its implicit assertion that the greater protection afforded defendants in criminal proceedings, such as constitutional and procedural safeguards, including the heightened burden of proof, impede factfinding, obscure truth and free defendants on technicalities. Its attempt to then justify a civil determination of "actual" guilt by trumpeting the factfinding, truth revealing pre-eminence of the civil justice system rings hollow. The court conveniently overlooks the fact that our civil justice system endorses such procedures as establishment and preclusion orders which render fact and truth absolutely irrelevant.

Civil cases involve questions of civil responsibility, not questions of criminal guilt or innocence. In this case, Shaw must first have had his conviction set aside. This means that he must have proven that his former defense attorney's actions fell below the standard of conduct for a lawyer with ordinary training and skill in criminal law, and that this defective performance contributed to the conviction. Duty and breach of duty have been admitted. Thus, even though the negligence of the former defense attorney has been established, the

---

**4.** Neither Burkoff nor Mallen & Smith suggest a defense of "actual guilt." In the treatises they have written, not one case is cited that supports the proposition that proof of "actual" guilt by a preponderance of the evidence, is an affirmative defense to a civil malpractice suit brought by a plaintiff whose criminal conviction has been set aside.

court holds that the attorney may avoid civil responsibility if the attorney can prove, by a preponderance of the evidence, that Shaw was "actually" guilty of the crime charged.

## III.

The court asserts that public policy demands this result. "[C]ivil recovery should not be a tool for shifting an individual's responsibility for the individual's criminal acts." Slip Op. 10. The court cites *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983) and *Lord v. Fogcutter Bar*, 813 P.2d 660 (Alaska 1991). In *Adkinson*, a plaintiff *convicted* of manslaughter attempted to bring a tort action against the gun manufacturer for personal losses suffered as a result of imprisonment. In *Lord*, a plaintiff *convicted* of kidnapping, rape, and assault attempted to bring a tort action against the bar, which served him alcohol, for the damages he suffered as a result of his imprisonment.

The court notes that *Adkinson* and *Lord* differ from the present case in that Shaw does not claim his attorney contributed to the criminal act. The court conveniently fails to note that both *Adkinson* and *Lord* were convicted and had not challenged the validity of the convictions. I agree that we should not allow the *convicted* criminal to "shift" the responsibility for the consequences of his or her criminal acts. When, as a result of the criminal proceeding, it has been determined that a defendant is guilty, the defendant alone should bear the responsibility and consequences.

However, the public policy which denied recovery to civil plaintiffs in *Adkinson* and *Lord* is fully served by our decision in *Shaw I*, which requires the criminal defendant to obtain post-conviction relief prior to bringing his or her civil malpractice suit. Once the criminal defendant has obtained post-conviction relief and his or her conviction has been set aside, there has been a judicial determination that there is no criminal responsibility. There simply is no public policy which should allow a negligent attorney to shift the responsibility for that attorney's negligence onto a plaintiff who has demonstrated that he or she is not guilty of the crime charged.

The court's adoption of the rule that guilt by a preponderance of the evidence is an affirmative defense to a civil malpractice suit has three unfortunate results. First, as a practical matter a person who is in fact innocent of criminal conduct is more likely to be found guilty when preponderance of the evidence is the standard of proof than when guilt beyond a reasonable doubt is the standard of proof. Safeguards in criminal proceedings that ensure that innocent people are not found guilty will not apply in the civil malpractice suit.

Second, a person who engages in specific conduct is treated very differently if charged with a crime, compared to a person who engages in the same conduct, but is not charged with a crime. For example, a *civil* defendant—not charged with a crime—who commits fraud, and is found civilly liable because of his or her attorney's malpractice, may recover civil damages against the attorney in a civil malpractice suit, including punitive damages, regardless of what the defendant did in fact. However, a *criminal* defendant who commits the same fraud, yet who would not have been convicted but for the attorney's malpractice, may never even get his or her case before the trier of fact.

Third, attorneys in civil cases are treated very differently from attorneys in criminal cases. The criminal defense attorney will no longer be found civilly liable for malpractice if he or she defends a person later found "actually" guilty of the crime originally charged, by a preponderance of the evidence. Yet attorneys in civil proceedings will continue to be exposed to liability for civil malpractice, regardless of what their client did or did not do in fact.

## IV.

Alaska already places the very heavy burden on a criminal defendant to obtain post-conviction relief as a prerequisite to maintaining a civil malpractice suit against his or her former defense attorney. Allowing a negligent attorney to escape liability

by permitting a trier of fact to determine that the civil plaintiff, who no longer stands convicted of any crime, probably committed the crime for which he or she has not been convicted, violates principles of our criminal justice system and our civil tort system. The civil plaintiff has already proven, by post-conviction relief in the criminal proceeding, that the former defense attorney's skill fell below minimal standards of a lawyer with ordinary skill and training in criminal law, and that this defective performance contributed to the conviction.

If at all, I would only recognize an affirmative defense that despite the attorney's negligence, the civil plaintiff would have been convicted of the crime originally charged, beyond a reasonable doubt, at a trial in which all constitutional and procedural safeguards were afforded.