Patrick PLETNIKOFF, Appellant,

v.

Sherrie JOHNSON, Appellee.

No. S–2269.

Supreme Court of Alaska.

Dec. 9, 1988.

C.R. Kennelly, Kennelly & Donohue, P.C., Anchorage, for appellant.

Jeri L. Bidinger, Thomas E. Williams, P.C., Eagle River, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Patrick Pletnikoff was the defendant in criminal and civil proceedings arising out of the alleged rape of Sherrie Johnson. In the criminal proceedings, a jury convicted Pletnikoff of rape; the court of appeals reversed the conviction and ordered a retrial; and Pletnikoff pled nolo contendere prior to the second trial. In the civil proceedings, the trial court granted summary judgment in favor of Johnson on the issue of liability on the basis of the prior jury conviction and the subsequent plea of nolo contendere. The trial court also granted summary judgment in favor of Johnson on the issue of damages. Pletnikoff appeals the civil judgment.

### I.

On April 2, 1983, Patrick Pletnikoff allegedly raped Sherrie Johnson. A jury found Pletnikoff guilty of two counts of first degree sexual assault on September 22, 1983. On January 31, 1985, Sherrie Johnson filed a complaint seeking civil damages for her alleged rape. Representing himself, Pletnikoff filed an answer, dated March 2, 1985, denying Johnson's allegations. On August 20, 1985, the trial court granted Johnson's motion for summary judgment on the issue of liability, based on Pletnikoff's criminal conviction.

On May 30, 1986, the court of appeals overturned Pletnikoff's conviction, finding that the jury could have been prejudiced by the trial court's admission of inadmissible evidence and by an erroneous jury instruction. *Pletnikoff v. State*, 719 P.2d 1039 (Alaska App.1986). In the pending civil proceedings, Johnson brought this to the attention of the trial court in an ex parte motion for a continuance of the civil trial, then scheduled to begin on August 11, 1986. The court continued the trial, explaining that "the fact of a new criminal trial changes the legal basis of the partial summary judgment granted 20 August 1985 and reopens the issues in this case on liability as well as damages."

Prior to his second criminal trial, Pletnikoff pled nolo contendere to the criminal charges.

Meanwhile, in the civil proceedings, Johnson's attorney, Jeri Bidinger, attempted to serve Pletnikoff with a first set of requests for admissions on October 3, 1986. Bidinger sent the requests to the Wildwood Correctional Center, the address Pletnikoff provided to the court. The requests were returned as not deliverable. Bidinger made two more unsuccessful attempts in December of 1986 to deliver the requests to other possible addresses.

Johnson filed a motion for partial summary judgment on the issue of liability, dated March 4, 1987. In that motion, Johnson argued that summary judgment on the issue of liability was appropriate based on the initial jury verdict against Pletnikoff, the subsequent plea of nolo contendere, and the facts that the evidence found inadmissible by the court of appeals would have been admissible in a civil proceeding and the jury instruction found erroneous by the court of appeals would have been correct for a civil proceeding. On March 4, 1987, after inquiring with the Department of Corrections as to the whereabouts of Pletnikoff, Bidinger mailed the summary judgment papers and the request for admissions to Pletnikoff at the Cook Inlet Pre-Trial Facility, 1300 East Fourth Avenue, Anchorage. A month later, Bidinger discovered that the mailing address of the Cook Inlet Pre-Trial Facility was P.O. Box 103155, Anchorage, and not the street address to which she had previously sent the papers. However, Bidinger also discovered that mail addressed to the street address, 1300 East Fourth Avenue, is delivered and distributed to the inmates. To further ensure service, Bidinger sent a second set of summary judgment papers to the Cook Inlet Pre-Trial Facility's post office box.

Pletnikoff did not oppose the motion for summary judgment. On April 3, 1987, the trial court granted summary judgment in favor of Johnson on the issue of liability.

Johnson moved for partial summary judgment on the issue of damages on May 15, 1987. Johnson based this motion on

Pletnikoff's failure to respond to the request for admissions. Johnson argued that, since Pletnikoff did not respond to the requests, the requests were deemed admitted and therefore no genuine issue of material fact remained on the issue of damages. Pletnikoff did not oppose this motion. The trial court granted summary judgment in favor of Johnson on the issue of damages and entered judgment for Johnson in the amount of $2,142,721.89.

Pletnikoff appeals, claiming: (1) the motion for partial summary judgment on the issue of liability was never served on Pletnikoff; (2) the trial court erred in granting summary judgment on the issue of liability because the jury verdict against Pletnikoff was overturned; (3) the requests for admissions were never served on Pletnikoff; and (4) the amount of damages awarded to Johnson was improper.

## II. SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY

### A. Service of Process

■ Pletnikoff argues that the superior court should not have granted Johnson's motion for summary judgment on the issue of liability because Johnson did not serve the motion on Pletnikoff before the court granted the motion.

Civil Rule 5(b) describes how service is effectuated:

> Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court.... Service by mail is complete upon mailing.

Johnson mailed a copy of the motion papers to Pletnikoff's last known address at the Cook Inlet Pre–Trial Facility on March 4, 1987. According to Civil Rule 5(b), service was complete at that time. Furthermore, it is clear that Pletnikoff ac-tually received the summary judgment papers in early March 1987, as he refers to them in his proposed order to dismiss, which accompanied a motion to dismiss dated March 9, 1987.

### B. Grant of Summary Judgment on the Issue of Liability

As we concluded above, Johnson served Pletnikoff with her summary judgment motion on March 4, 1987. Pletnikoff had fifteen days to respond, Alaska R.Civ.P. 77(c), but did not do so. The court entered summary judgment in Johnson's favor on the issue of liability on April 6, 1987.

The proponent of a summary judgment motion has the initial burden of establishing the absence of genuine issues of material fact and his or her right to judgment as a matter of law. *See* Alaska R.Civ.P. 56; *see also Weaver Bros. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984). The proponent has no absolute right to summary judgment merely because the opponent fails to respond. *Dome Laboratories v. Farrell*, 599 P.2d 152, 159 n. 24 (Alaska 1979).

Johnson argues in both her summary judgment papers and her appellate brief that the jury verdict finding Pletnikoff guilty of sexual assault, ultimately overturned by the court of appeals in *Pletnikoff v. State*, 719 P.2d 1039 (Alaska App. 1986), established Pletnikoff's liability in the civil case. The court of appeals overturned the jury verdict after finding that the jury was prejudiced by the trial court's admission of inadmissible testimony and by an erroneous jury instruction.[1] *Id.* at 1042–45. Johnson argues that the jury instruction correctly stated a defense for the civil law tort of rape and that either piece of evidence would have been admissible in the civil proceeding or its admission would not constitute reversible error due to the lower standard of proof required in a civil case. Thus, Johnson concludes, " '[n]o

---

1. At the trial, A.E. testified that she had a similar encounter with Pletnikoff one week prior to the encounter at issue in that case. *Pletnikoff*, 719 P.2d at 1041. The court of appeals held that A.E.'s testimony was inadmissible character evidence. *Id.* at 1044.

The court of appeals also held that the trial court erred in instructing the jury "that only a good faith and reasonable mistake of fact regarding [the victim's] consent would constitute a defense" to rape. *Id.*

valid reason exists why [the defendant] should be given a chance to try his luck with another jury,' " quoting *Hurtt v. Stirone,* 416 Pa. 493, 206 A.2d 624 (Pa.) *cert. denied,* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965), *quoted with approval in Scott v. Robertson,* 583 P.2d 188, 191 n. 14 (Alaska 1978).

■ We disagree and hold that the criminal proceedings against Pletnikoff have no collateral estoppel effect in the subsequent civil suit.

We look at what effect, if any, an overturned criminal conviction can have on a subsequent civil proceeding. Before collateral estoppel will operate to prevent the relitigation of an issue in a subsequent suit, "a judgment must be valid, final, and on the merits." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4432, at 298 (1981). Once a·judgment has been reversed by an appellate court, the finality requirement is no longer satisfied and issue preclusion no longer operates to prevent relitigation of the issues initially decided but ultimately reversed:

> Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings. The fact that an appeal is pending in a higher appellate court does not restore the preclusive effects of the reversed judgment.

*Id.* at 303 (footnote omitted). Applying these concepts to Pletnikoff's case leads us to conclude that the original conviction, which was ultimately overturned, had no collateral estoppel effect because it was no longer a final judgment. That is, the original conviction could not establish liability in the subsequent civil proceeding.[2]

In sum, since the criminal proceedings have no collateral estoppel effect in the subsequent civil proceedings and since

Johnson presented no other affidavits, we conclude that she has failed to meet her initial burden of establishing the absence of genuine issues of material fact and her right to judgment as a matter of law. The trial court erred in granting summary judgment in favor of Johnson on the issue of liability.

## III. SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES

### A. Service of Process

Pletnikoff argues that Johnson did not serve him with the requests for admissions until May 15, 1987, the date Johnson served Pletnikoff with the motion for partial summary judgment on the issue of damages. Thus, Pletnikoff had thirty days or until June 14, 1987, to respond to the requests. *See* Alaska R.Civ.P. 36(a). However, the trial court granted summary judgment on the issue of damages in favor of Johnson on June 11, 1987. Pletnikoff argues that the trial court should not have granted the summary judgment because the thirty days had not yet lapsed.

Johnson states that service of the requests for admissions was first attempted on October 3, 1986, by mailing the requests to the address Pletnikoff provided to the court. When this was returned to the sender unopened, Bidinger made two more unsuccessful attempts to serve Pletnikoff in December, 1986. Finally, Bidinger tracked down Pletnikoff at the Cook Inlet Pre–Trial Facility. After calling the facility to get its address, Bidinger mailed the requests on March 4, 1987, to 1300 East Fourth Avenue, the street address, but not the mailing address of the facility. Johnson was later told that mail addressed to the street address was accepted and delivered to inmates.

■ Civil Rule 5(b) provides that "[s]ervice by mail is complete upon mailing" to the party's "last known address." Accord-

---

**2.** We express no view as to whether the conviction based on Pletnikoff's plea of nolo contendere might have collateral estoppel consequences because that subject was not adequately briefed by the parties. *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980)

("When, in the argument portion of a brief, a major point has been given no more than cursory statement, we will not consider it further. Failure to argue a point constitutes an abandonment of it.").

ingly, "nonreceipt or nonacceptance of the papers generally does not affect its validity...." 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1148, at 430–31 (2d ed. 1987); *see also Martens v. Metzgar*, 524 P.2d 666, 676 (Alaska 1974). Accordingly, service of the requests for admissions was complete on March 4, 1987.

### B. Grant of Summary Judgment on the Issue of Damages

#### 1. Compensatory Damages

Soon after the trial court issued its order granting summary judgment on the issue of liability, Johnson moved for partial summary judgment on the issue of damages. Johnson argued that since Pletnikoff failed to respond to the requests for admissions, the matters were deemed admitted and there remained no genuine issue of material fact on the issue of damages. The trial court granted summary judgment on the issue of damages, awarding Johnson $752,008.09 in compensatory damages, $1,000,000 in punitive damages, and costs and attorney's fees, resulting in a final judgment of $2,142,721.89.

Civil Rule 36(a) provides in pertinent part:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request....

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney....

The requests for admissions upon which the final judgment ultimately rested were as follows:

PLEASE ADMIT OR DENY:

1. That the facts alleged by the State in Criminal Case No. 83–3329 are true.

YOUR RESPONSE:

2. That Sherrie Johnson showed significant and observable emotional distress subsequent to that event.

YOUR RESPONSE:

3. That Sherrie Johnson's psychological bills attached hereto are true and reasonable expenditures for Plaintiff under those circumstances.

YOUR RESPONSE:

4. That Plaintiff lost earnings in an amount not less than $250,000.00 as a result of the said incident.

YOUR RESPONSE:

5. That Plaintiff's general damages as a result of the said incident are in excess of $500,000.00.

YOUR RESPONSE:

Pletnikoff never served a written answer or objection to any of these requests for admissions. Nor did he ever move either to withdraw the admissions or to file a late answer to the request for admissions. Thus, pursuant to Civil Rule 36(a), Pletnikoff is deemed to have admitted the above requests.[3] *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2259, at 726 (1970) ("[i]t is needlessly

---

3. Request 1 is pertinent to the liability issue. Request 1 could provide an alternative basis for us to affirm the trial court's grant of summary judgment on the issue of liability for it contains the admission that Pletnikoff did commit the criminal act of sexual abuse which contains the same elements as the common law tort of rape. We choose not to use Request 1 as an alternative basis for affirming the trial court's liability order for the following reasons: First, neither party addressed this issue before either the trial court or this court. Second, Pletnikoff represented himself before the trial court and it is this type of technical, procedural aspect of the law which we should apply more leniently to parties representing themselves, especially when it involves important issues of liability. Third, both Johnson and the trial judge treated the requests as pertinent only to the damages issue, presumably since liability had already been established. Thus, the trial court never ruled that the request also established Johnson's liability. Neither do we.

wasteful of judicial effort to allow a party to obtain a reversal on appeal because of an objection he could have but failed to make when the request was served"). The trial court's award of $752,008.09 in compensatory damages can be gleaned from Requests 3–5 and the affidavit filed by Bidinger.[4]

■ Pletnikoff argues that the judgment was improper because it "contained a claim for lost profits and earnings that was not even raised in the pleadings." However, Pletnikoff fails to cite any legal support for this argument, and never raised this issue before the trial court.

Johnson did fail to specifically allege loss of income in her complaint. However, she did allude to it in her papers supporting her motion for summary judgment on the issue of damages.

Civil Rule 15(b) provides liberally for the amendment of complaints:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.*

(Emphasis added.) Since the issue was never raised before the trial court, neither party moved to amend the pleadings. However, this failure to amend "does not affect the result of the trial of these issues." Alaska R.Civ.P. 15(b).

In sum, since any matter admitted under Civil Rule 37 "is conclusively established," Alaska R.Civ.P. 37(b), Johnson is entitled to an order declaring her compensatory damages admitted in the amount of $752,-008.09.

### 2. Punitive Damages

Pletnikoff also argues that the trial court erred in awarding $1,000,000 in punitive damages to Johnson.

The punitive damages were not the subject of any of the requests deemed admitted so they cannot be justified by the same reasoning as the compensatory damages. Johnson argues that, since all the other issues were settled and the judge was the trier of fact, it was appropriate for the judge to award $1,000,000 in punitive damages.

■ Johnson cites *Sturm, Ruger & Co. v. Day*, 594 P.2d 38 (Alaska 1979), *modified*, 615 P.2d 621 (Alaska 1980), *modified*, 627 P.2d 204 (Alaska 1980), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *overruled on other grounds, Dura Corp. v. Harned*, 703 P.2d 396, 405 n. 5 (Alaska 1985), for the proposition that an appellate court can fix punitive damages. 615 P.2d 621. From that proposition, Johnson argues that "if an appellate court is qualified to fix punitive damages based on the dry record before it, the trial judge and trier-of-fact can fix a punitive damage award after summary judgment on the issues of liability and damages without the necessity of holding a trial on that issue alone." We disagree. In *Sturm, Ruger*, after a trial of the issues, the jury awarded punitive damages. It was only after an extensive trial record was established that the appellate court reduced the award of punitive damages from $2,895,000 to $500,-000.

In the case at bar, a trial was never held, so no trial record was available. Instead, the trial court relied solely on Johnson's summary judgment papers. However, the issue of punitive damages is tightly interwoven with the issue of liability. "A determination of exemplary damages requires an examination of the total circumstances of the case." *Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247, 1257 (Idaho 1983). We have noted on numerous occa-

---

**4.** The psychological bills referred to in Request 3 were attached to the requests for admissions, and add up to approximately $2,008.00. The sum of this figure, the lost earnings damages admitted in Request 4, and the general damages admitted in Request 5 is the same as the trial court's award of compensatory damages.

sions that the factors to consider in awarding punitive damages are the amount of compensatory damages and, more importantly, the magnitude and flagrancy of the offense, the importance of the policy violated, and the wealth of the defendant. *Ben Lomond, Inc. v. Campbell,* 691 P.2d 1042, 1048 (Alaska 1984); *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 205 (Alaska 1980); *Sturm, Ruger,* 594 P.2d at 48. In the instant case, there is no evidence in the record of the flagrancy of the offense, the wealth of the defendant, or any other circumstances surrounding the case. Accordingly, since the issue of liability is subject to retrial, so should the issue of punitive damages.

## IV.

We reverse the trial court's grant of summary judgment on the issue of liability and punitive damages and remand to the trial court for further proceedings on these issues.

We affirm the trial court's grant of summary judgment on the issue of compensatory damages based on Pletnikoff's failure to respond to Johnson's requests for admissions. If Johnson prevails on remand on the issue of liability, she is entitled to an award of compensatory damages in the amount established by the summary judgment.

AFFIRMED in part, REVERSED in part.

MATTHEWS, Chief Justice, dissenting.

Pletnikoff stands convicted of the first degree sexual assault of Sherrie Johnson, based on his plea of *nolo contendere.* In my view, the rule of collateral estoppel applies to this conviction and warrants summary judgment against him in the present civil action.[1]

In reaching this conclusion, I acknowledge that under federal law an exception is made to the rule of collateral estoppel for convictions based on pleas of *nolo contendere.* However, Alaska law is significantly different from federal law on the subject of *nolo contendere* pleas and these differences justify rejecting the exception to the rule of collateral estoppel.

The Alaska Rules are significantly different from the Federal Rules on the question of the effect of a plea of *nolo contendere.* Rule 410 of the Federal Rules of Evidence explicitly states that *nolo contendere* pleas are inadmissible while Alaska Rule of Evidence 410 does not. Further, Federal Criminal Rule 11(b) provides that a defendant may plead *nolo contendere* only with the consent of the court and only then after the court has given "due consideration of the views of the parties and the interest of the public in the effective administration of justice." Alaska has no counterpart to this provision. Moreover, Federal Criminal Rule 11(e)(6)(B) explicitly makes inadmissible a plea of *nolo contendere.* Alaska Criminal Rule 11(e)(6) contains no such provision. Finally, Federal Evidence Rule

---

1. Under the modern law of judgments a conviction based on a plea of guilty collaterally estops a convicted defendant from relitigating the essential elements of the crime of which he stands convicted. *Municipality of Anchorage v. Hitachi Cable Ltd.,* 547 F.Supp. 633, 641–44 (D. Alaska 1982); *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978). *See also* 18 U.S.C. § 3580(e) (1982) which provides:

   A conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

   This section, which is part of the Federal Victim and Witness Protection Act of 1982, is said to be

merely a codification of the general rule of collateral estoppel, *United States v. Palma,* 760 F.2d 475, 479 (3rd Cir.1985).

The essential elements of sexual assault in the first degree are an act of sexual penetration with another person, without the consent of that person. AS 11.41.410(a)(1). Those are also the essential elements of the tort of rape. They should, by application of the doctrine of collateral estoppel, be regarded as established by Pletnikoff's conviction. Collateral estoppel does not apply where the defendant lacks incentive to contest the initial litigation, *Municipality of Anchorage,* 547 F.Supp. at 643, a circumstance which does not exist in a serious criminal case. *Scott v. Robertson,* 583 P.2d 188, 192 (Alaska 1978).

803(22) provides that "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year" is not hearsay. This suggests by implication that a conviction based upon a plea of *nolo contendere* is hearsay. By contrast the Alaska Evidence Rules contain no exception to the hearsay rule for judgments of previous conviction. The commentary explains that this omission was made advisedly, since the effect of a judgment of conviction is properly a subject governed by the rules of collateral estoppel, rather than the rules of evidence. *See* Alaska Evidence Rule 803 and commentary at 390 (1988).

As a matter of decisional law, Alaska law also differs from federal law concerning *nolo* pleas. In the federal system the trial judge has the discretion to reject a *nolo* plea. In Alaska a defendant may plead *nolo* rather than guilty as a matter of right. *Miller v. State,* 617 P.2d 516, 518 (Alaska 1980); *Lowell v. State,* 574 P.2d 1281, 1285 (Alaska 1978).

Permitting a defendant to plead *nolo* rather than guilty is, in the federal system, seen as a benefit to the defendant because it reduces the likelihood of the defendant's being held liable in subsequent civil litigation. The *nolo* plea is thus a concession. It is afforded only where the defendant deserves it or when other circumstances indicate its desirability:

> A defendant who desires to plead nolo contendere will commonly want to avoid pleading guilty because the plea of guilty can be introduced as an admission in subsequent civil litigation. Th[ ] [sic] prosecution may oppose the plea of nolo contendere because it wants a definite resolution of the defendant's guilty [sic] or innocence either for correctional purposes or for reasons of subsequent litigation. *ABA Standards Relating to Pleas of Guilty,* § 1.1(b) Commentary at 16–18 (Approved Draft, 1968). Under subdivision (b) of the new rule [Fed.R.Cr.P. 11(b) ], the balancing of the interests is left to the trial judge, who is mandated

to take into account the larger public interest in the effective administration of justice.

1975 Committee Note to Federal Rule of Criminal Procedure 11, set out in 8 *Moore's Federal Practice, Rules of Criminal Procedure,* ¶ 11.01[4] at 11–9 (1986).

The ABA standards referred to by the Committee add the following: "To some degree, the tests for determining whether to accept the nolo plea are similar to those for granting charge and sentence concessions (see standard 14–1.8(a)). Acceptance of the nolo plea is a kind of concession, as it relieves the defendant of the choice between trial and pleading guilty." III *ABA Standards for Criminal Justice* § 14–1.1(b) Commentary at 14.12 (2d ed. 1980). The tests referred to in this Commentary for granting charge and sentence concessions are:

> It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant, and when there is substantial evidence to establish that:
>
> (i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;
>
> (ii) the concessions will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;
>
> (iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or
>
> (iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged

in equally serious or more serious criminal conduct.

*Id.* at 14.40.

Taking it as given that in Alaska a defendant may plead *nolo* as a matter of right, it appears sound to give a narrow construction to the consequences of a *nolo* plea. The exception to the rule of collateral estoppel which is afforded a defendant who pleads *nolo* in the federal system may make sense in deserving cases, but there is little to recommend its application to all cases.[2]

That conclusion is implicit in the Standards for Criminal Justice of the American Bar Association. The Standards conclude, first, that the case for *nolo* pleas is not strong enough to support their use, nor is the case against them strong enough to oppose their use. III *ABA Standards For Criminal Justice* § 14.1.1(a) Commentary at 14.11 (2d ed. 1980).[3] Second, that if *nolo* pleas are allowed in a particular jurisdiction, they should not be allowed without safeguards, foremost of which is that a defendant may plead *nolo* only with the consent of the court after due consideration of the views of the parties, the victims, and the interest of the public. III *ABA Standards for Criminal Justice* § 14–1.1(a)—(b) and Commentary at 14.11–12 (2d ed. 1980).

In *Lowell,* we held that convictions based on *nolo* pleas could be used for impeachment purposes. We also implicitly accepted a narrow view concerning the consequences of convictions based on *nolo* pleas:

> [T]hat the only forbidden consequence of a nolo plea is its use as an admission in a civil action, and that all other uses of the conviction are permissible as if the plea were of guilty, not nolo.

*Lowell v. State,* 574 P.2d 1281, 1285 (Alaska 1978).

I take this language literally. A *nolo* plea may not be used as an admission in a civil action. However, insofar as a *nolo* plea results in a conviction, the conviction may be used for any purpose for which any conviction based on a plea of guilty might be used.

---

2. Since a defendant may plead *nolo* as a matter of right, guilty pleas are virtually non-existent in felony cases in Alaska. My review of the most recent volume of the Alaska Reporter (747–751 P.2d) shows no cases in which a guilty plea was used.

3. The pros and cons of the *nolo* plea are summarized in the Commentary as follows:

> Since an accused is either guilty of the offense charged or not guilty, there seems to be, logically speaking, no room for a plea "in between." It is, of course, easy to understand why a person guilty of an offense should prefer to plead nolo contendere instead of pleading guilty, thus avoiding being estopped from denying the facts to which he interposed the plea in a subsequent civil proceeding. But obviously, the fact that the plea has certain advantages for the guilty lawbreaker is not a sufficient justification for its existence.
>
> It can even be perceived why under certain rather exceptional circumstances a person innocent of the offense charged should prefer the plea of nolo contendere to a plea of not guilty, and the courts occasionally give hints as to such circumstances. Such possible motivations have been said to be: to save expense and avoid notoriety; to avoid unpleasant publicity; to avoid a hostile jury; and to waive contest obviously hopeless because of lack of witnesses. These considerations do not seem to be very compelling or worthy of protection in view of the fact that the public at large has as much interest in the conviction of the guilty as in the acquittal of the innocent. Because of its doubtful usefulness, the plea has been abolished by statute in some jurisdictions, while in others it has practically disappeared by this use [sic]. It enjoyed a partial revival during the prohibition era, when it was pleaded to charges of violations of the liquor law, and it is applied with increasing frequency in anti-trust prosecutions. Only if it can be shown that the plea of nolo contendere serves a real and useful function in the administration of justice, can its continued use be considered as justified.
>
> So far as logic and clearness is concerned, the complete abolition of the plea could not be considered as a great loss to our legal system. There are, however, practical considerations which allegedly speak for a retention of the plea. They are said to exist in the type of wrong which "is not malum in se, but rather malum prohibitum" and "peculiarly of an economic nature." In such a case, it is argued, the acceptance of the plea constitutes realistic policy because it dispenses with lengthy and expensive trials. This has been said to be especially true in anti-trust prosecutions. . . .

III *ABA Standards for Criminal Justice,* § 14–1.1(a) Commentary at 14.10–11 (*quoting* Annot. 152 A.L.R. 253, 295–296 (1944)).

It is reasonable to inquire as to what the function of a *nolo* plea is in Alaska if a conviction based on a *nolo* plea is not excepted from the rule of collateral estoppel. The answer is suggested in *Miller v. State,* 617 P.2d 516 (Alaska 1980). There the trial court first accepted, but later rejected, Miller's plea of *nolo contendere* to misdemeanor child abuse. The trial court rejected the *nolo* plea because the defendant had continued to maintain his innocence in conversations with friends and associates. We reversed the trial court's rejection of the *nolo* plea, observing that even an innocent defendant might plead *nolo:* "The plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." *Miller,* 617 P.2d at 518–19, *quoting North Carolina v. Alford,* 400 U.S. 25, 35 n. 8, 91 S.Ct. 160, 166 n. 8, 27 L.Ed.2d 162, 170 n. 8 (1970).

*Miller* suggests that one benefit of the *nolo* plea is personal dignity. The defendant is allowed to maintain his innocence both publicly and privately while consenting to an adjudication of guilt. Thus Alaska law does not require a public confession, which, to some, entails great humiliation, as the price for dispensing with a criminal trial. Since the *nolo* plea is available to all defendants, that, in my view, should be the only benefit of the procedure.