Ricky J. BURCINA, Appellant,

v.

CITY OF KETCHIKAN, Gateway Center for Human Resources and Russell A. Huffman, Jr., Appellees.

No. S–5893.

Supreme Court of Alaska.

Sept. 22, 1995.

---

Caroline B. Crenna and Thomas W. Findley, Dillon & Findley, P.C., Juneau, for Appellant.

A. Fred Miller and Kevin G. Miller, A. Fred Miller, Attorneys at Law, Ketchikan, for Appellees City of Ketchikan and Gateway Center for Human Resources.

Geoffrey G. Currall, Keene & Currall, P.C., Ketchikan, for Appellee Russell A. Huffman, Jr.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

Ricky Burcina, who has a long history of mental illness and substance abuse, set fire to the Gateway Mental Health Drop–In Center and was subsequently convicted of arson. Thereafter, Burcina filed suit against the Gateway Center for Human Resources and his psychiatrist, Dr. Russell Huffman, claiming that he had received negligent treatment which aggravated his mental illness and caused him to set the fire. Burcina appeals from the superior court's grant of summary judgment in favor of both defendants. We affirm.

## II. FACTS AND PROCEEDINGS

Following his release from prison in early 1986,[1] Ricky Burcina began outpatient mental health care with Gateway Center for Human Resources (Gateway), a department of the City of Ketchikan. Burcina began seeing

---

1. Burcina injured several police officers during a psychotic episode and was subsequently charged with six counts of assault, convicted and incarcerated. Burcina was then committed to the Alaska Psychiatric Institute where he was diagnosed as having paranoid schizophrenia and mixed substance abuse, "with primary drug abuse being LSD, but to include cocaine and marijuana."

Dr. Wandal Winn, a psychiatric consultant to Gateway, who prescribed Navane (an antipsychotic medication) as part of Burcina's treatment program. In February of 1987, Burcina requested that his medication be reduced. Dr. Winn believed that it was appropriate to begin to taper Burcina off his antipsychotic medication because Burcina's mental condition had stabilized and he was receiving vocational training that required fine motor coordination.

Burcina began seeing Dr. Russell Huffman in June of 1987.[2] Dr. Huffman provided "talk therapy" to Burcina, and may have had a role in monitoring Burcina's medication. However, Burcina continued to consult with and have his medication prescribed and monitored by Dr. Winn and Gateway.

In July 1987, Dr. Winn informed Burcina that he could gradually reduce his medication with the goal of completely discontinuing it in about sixty days. However, by November, Dr. Winn became concerned about Burcina's conduct and suggested that he restart the medication. Burcina refused. Nancy Hunter, a social worker at Gateway, also suggested that Burcina restart his medication, but he again refused. Over the next several months, Dr. Huffman, Dr. Winn, and Hunter continued to inform Burcina that he should be taking his medication. However, Burcina refused and thus became progressively more delusional.

On February 5, 1988, Burcina set fire to the Gateway Mental Health Drop–In Center (Drop–In Center). Burcina explained that he "thought that alien forces were trying to capture and kill [him]," and that he "set fire to the Drop–In Center in order to get the FBI's attention so that the FBI could protect [him] and debrief [him]." Burcina was charged with arson in the first degree.[3]

Thereafter, the superior court ordered a psychological evaluation. Burcina revealed to the psychologist that he had been abusing various substances including street drugs prior to February 5. The psychologist concluded that Burcina's psychotic episodes were induced by substance abuse and indicated that he would not be willing to make a diagnosis of schizophrenia "unless it can be clearly proven that [Burcina] demonstrates symptoms of schizophrenia on an outpatient basis when not using euphorigenic or mind-altering street drugs." The psychologist concluded that Burcina was competent to stand trial. Burcina subsequently entered a plea of *nolo contendere* to arson and was sentenced to eight years of incarceration with five and one-half years suspended.

On February 2, 1990, Burcina filed suit against Gateway and Dr. Huffman claiming that he had received negligent treatment which aggravated his mental illness and, during a psychotic episode, caused him to set fire to the Drop–In Center. Burcina alleged that as a result of his conviction for arson and subsequent imprisonment, he had suffered and continues to suffer mental anguish, loss of income, loss of enjoyment of life, and emotional distress.

Before trial, Gateway and Dr. Huffman moved for summary judgment. The superior court granted Gateway's and Dr. Huffman's motions holding that Burcina's claims are prohibited by public policy. Specifically, the superior court relied upon the general rule that

> [a] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party. Also, he cannot maintain a claim for damages based on his own wrong or caused by his own neglect, ... or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

1A C.J.S. *Actions* § 29, at 386–87 (1985). Burcina now appeals.

---

**2.** During the period from 1986 through 1988, Dr. Huffman was engaged in the private practice of psychiatry in Ketchikan. In addition, he had a contract with the City for "referred emergency mental health patients ... needing urgent care."

**3.** Under AS 11.46.400, "[a] person commits the crime of arson in the first degree if the person intentionally damages any property by starting a fire or causing an explosion and by that act recklessly places another person in danger of serious physical injury."

### III. DISCUSSION

#### A. Burcina's Claims are Prohibited by Public Policy [4]

This court has recognized the public policy principle which precludes a person who has been convicted of a crime from imposing liability on others for the consequences of that antisocial conduct.[5] Under this court's previous decisions, recovery is precluded at the " 'very threshold of the plaintiff's application for judicial relief.' " *Lord v. Fogcutter Bar*, 813 P.2d 660, 663 (Alaska 1991) (quoting *Barker v. Kallash*, 63 N.Y.2d 19, 479 N.Y.S.2d 201, 203–05, 468 N.E.2d 39, 41–42 (1984)).

The superior court granted summary judgment in favor of Gateway and Dr. Huffman on the ground that Burcina's suit is prohibited by public policy. On appeal, Burcina argues that his suit is not barred because he was insane at the time he committed the crime of arson. In effect, Burcina requests that an exception be created to *Adkinson, Lord, Shaw,* and *Beilgard* in the circumstance where the person is insane at the time he or she commits the criminal act.

This court first held that, as a matter of public policy, a person who has been convicted of a crime is precluded from imposing civil liability on others for the consequences of his or her own criminal conduct in *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983). We held that Adkinson, who was convicted of manslaughter for shooting and killing a person with a shotgun, had no claim for relief in tort against either the manufacturer or the seller of the shotgun. *Id.* at 1240. In holding that Adkinson's claims were barred by public policy, we stated that "allowing a criminal defendant, who has been convicted of an intentional killing, to impose liability on oth-

ers for the consequences of his own antisocial conduct runs counter to basic values underlying our criminal justice system." *Id.* Thus, we concluded that because Adkinson was convicted based on his intentional conduct, he alone was responsible for any resultant personal losses.

In *Lord v. Fogcutter Bar*, 813 P.2d 660, 663 (Alaska 1991), we held that Lord, who was convicted of kidnapping, rape and assault which took place after he was served more than fourteen drinks at the Fogcutter Bar, was precluded from recovering in tort against the Fogcutter Bar. Lord alleged that the Fogcutter was liable for the damages he suffered as a result of his imprisonment because the Fogcutter and its employee violated Alaska's dram shop statute by selling Lord alcohol while he was a "drunken person." *Id.* at 662. We noted that "[c]ourts have consistently refused to aid those whose claims are based on their own illegal acts," and held that Lord's claim was barred for the same reason that summary judgment was affirmed in *Adkinson. Id.* at 663.

In *Shaw v. State, Department of Administration*, 861 P.2d 566, 571 (Alaska 1993) (*Shaw II*), this court held that the public policy principle enunciated in *Adkinson* and *Lord* prevented recovery on the part of a plaintiff in a professional malpractice action against his former defense attorney where the plaintiff in fact engaged in the criminal conduct with which he was charged. We noted our previous holdings "that civil recovery should not be a tool for shifting an individual's responsibility for the individual's criminal acts." *Id.* As in *Adkinson* and *Lord*, we held "that if plaintiffs engaged in the criminal conduct they are accused of, then they alone should bear full responsibility for the consequences of their acts, including imprisonment." *Id.* at 572.

---

4. A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1193 (Alaska 1992). In determining whether a party is entitled to judgment as a matter of law, all reasonable inferences of fact must be drawn against the moving party and in favor of the non-moving party. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992). And where, as here, an appeal raises questions of law and public policy, we apply our independent judgment and adopt "the

rule of law which is most persuasive in light of precedent, reason and policy." *Shanks*, 835 P.2d at 1193.

5. *Beilgard v. State*, 896 P.2d 230, 233–34 (Alaska 1995); *Shaw v. State, Dep't of Admin.*, 861 P.2d 566 (Alaska 1993) (*Shaw II*); *Lord v. Fogcutter Bar*, 813 P.2d 660, 663–64 (Alaska 1991); *Adkinson v. Rossi Arms Co.*, 659 P.2d 1236, 1240 (Alaska 1983).

In *Beilgard v. State*, 896 P.2d 230 (Alaska 1995), we held that Beilgard, who was convicted of violating Alaska's game laws after requesting information and assistance from State employees as to what permits were required for his business, possessed no viable claim for relief in tort against the State. Our holding in *Beilgard* was grounded on the public policy principle enunciated in *Adkinson, Lord,* and *Shaw II. Id.* at 233–34.

In recognizing and applying this public policy principle, we have favorably cited two cases which are factually similar to the present case.[6] In *Cole v. Taylor*, 301 N.W.2d 766 (Iowa 1981), the Iowa Supreme Court held that Cole was prohibited from recovering in tort from her psychiatrist, Taylor, on her claim that Taylor negligently failed to prevent her from committing murder. Cole shot and killed her former husband, and was subsequently charged, tried and convicted of first-degree murder. *Id.* at 766. Cole alleged that during her course of treatment, Taylor became aware that she had violent inclinations and was thinking about killing her former husband. *Id.* at 767. Cole claimed that Taylor failed in his treatment of her, that he failed to restrain her by hospitalization, and that he failed to warn her former husband of any impending danger. *Id.* After recognizing the general policy rule that a person should not be able to rely on an illegal act to maintain a cause of action, the lower court dismissed Cole's suit. The Supreme Court of Iowa held that Cole's responsibility for her criminal conduct was established by her murder conviction, and "that it would be, plainly and simply, wrong as a matter of public policy to allow recovery." *Id.* at 768.

Likewise, in *Glazier v. Lee*, 171 Mich.App. 216, 429 N.W.2d 857, 860 (1988), the Michigan Court of Appeals followed *Cole* and held that Glazier was precluded from recovering in tort from his psychologist, Lee, on his claim that Lee negligently failed to prevent him from committing murder. Glazier shot and killed his girlfriend and was subsequently convicted of voluntary manslaughter. *Id.* 429 N.W.2d at 858. Glazier claimed that Lee negligently failed to medicate or hospitalize him, suggested violence to him when he was in a volatile, dependent state of mind, and failed to warn Glazier's girlfriend of his potential for violence. *Id.* The court held that Glazier's claim was barred based on the rule articulated in *Cole. Id.* 429 N.W.2d at 859. The controlling factor was Glazier's own criminal responsibility as evidenced by his voluntary manslaughter conviction. *Id.*

Based on the foregoing, we conclude that the public policy principle which precludes a person who has been convicted of a crime from imposing liability on others for the consequences of his or her own antisocial conduct applies here. Thus, we hold that Burcina's claims against Gateway and Dr. Huffman are barred.[7]

## B. *Burcina's Plea of Nolo Contendere Has Collateral Estoppel Effect*

■ Burcina also asserts that summary judgment was inappropriate because there was a genuine issue of material fact as to whether he was legally insane when he set the fire. He argues that because he was insane, the policies discussed in the previous section should not preclude his claim. *See Boruschewitz v. Kirts*, 197 Ill.App.3d 619, 144 Ill.Dec. 73, 554 N.E.2d 1112 (1990). However, because a necessary element of Burcina's criminal conviction for arson was that he have the requisite intent,[8] we conclude that he is collaterally estopped from relitigating the issue of his mental capacity.[9]

■ In *Sun v. State*, 830 P.2d 772, 777 & n. 9 (Alaska 1992), we held that AS 09.17.030[10] collaterally estops a civil plaintiff

---

6. *Lord,* 813 P.2d at 663; *Adkinson,* 659 P.2d at 1240.

7. Our holding that public policy bars Burcina's claims against Gateway and Dr. Huffman makes it unnecessary for us to consider whether Burcina's claims are also prohibited by AS 09.17.030.

8. *See supra* note 3 for the text of AS 11.46.400 defining the crime of arson in the first degree.

9. Because we conclude that Burcina is collaterally estopped from relitigating the issue of his insanity, we need not decide whether to adopt the exception annunciated in *Boruschewitz.*

10. Former AS 09.17.030, subsequently renumbered as AS 09.65.210, provides:

 A person who suffers personal injury or death may not recover damages for the person-

from denying a criminal act to which he plead *nolo contendere.* Although our holding was based on the express language of AS ·09.17.030, we have noted that AS 09.17.030 embodies the public policy principle enunciated in Alaska case law. *Lord,* 813 P.2d at 663. We now combine and clarify these rules. We hold, based on public policy grounds, that a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled *nolo contendere.*

Such a conclusion is supported by Alaska rules and decisional law on the subject of *nolo contendere* pleas. *Pletnikoff v. John-son,* 765 P.2d 973, 979–82 (Alaska 1988) (Matthews, C.J., dissenting).[11] We note that had Burcina wished to avoid these collateral consequences of his *nolo contendere* plea, he could have asserted the defenses of either insanity[12] or mental disease or defect,[13] or he could have entered a plea of guilty but mentally ill.[14]

Based on the foregoing, we hold that Burcina's plea of *nolo contendere* has collateral estoppel effect in this subsequent civil litigation because his claim is prohibited by public policy.

al injury or death if the injuries or death occurred while the person was engaged in the commission of a felony, the person has been convicted of a felony, including conviction based on a guilty plea or a plea of nolo contendere, and the felony substantially contributed to the injury or death. This section does not affect a right of action under 42 U.S.C. 1983.

**11.** In *Pletnikoff,* this court expressly refrained from considering whether a conviction based on a plea of *nolo contendere* has collateral estoppel effect because the issue was not adequately briefed by the parties. *Id.* at 976 n. 2. In a dissent, Chief Justice Matthews reasoned that collateral estoppel should apply to the conviction at issue even though the subject was not adequately briefed. *Id.* at 979. Chief Justice Matthews noted that under federal law the rule of collateral estoppel does not apply to convictions based on pleas of *nolo contendere. Id.* He then discussed the differences between Alaska law and federal law, and why these differences justify applying the rule of collateral estoppel to convictions based on pleas of *nolo contendere* in Alaska:

The Alaska Rules are significantly different from the Federal Rules on the question of the effect of a plea of *nolo contendere.* Rule 410 of the Federal Rules of Evidence explicitly states that *nolo contendere* pleas are inadmissible while Alaska Rule of Evidence 410 does not. Further, Federal Criminal Rule 11(b) provides that a defendant may plead *nolo contendere* only with the consent of the court and only then after the court has given "due consideration of the views of the parties and the interest of the public in the effective administration of justice." Alaska has no counterpart to this provision. Moreover, Federal Criminal Rule 11(e)(6)(B) explicitly makes inadmissible a plea of *nolo contendere.* Alaska Criminal Rule 11(e)(6) contains no such provision. Finally, Federal Evidence Rule 803(22) provides that "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year" is not hearsay. This suggests by implication that a con-

viction based upon a plea of *nolo contendere* is hearsay. By contrast the Alaska Evidence Rules contain no exception to the hearsay rule for judgments of previous conviction. The commentary explains that this omission was made advisedly, since the effect of a judgment of conviction is properly a subject governed by the rules of collateral estoppel, rather than the rules of evidence. *See* Alaska Evidence Rule 803 and commentary at 390 (1988).

As a matter of decisional law, Alaska law also differs from federal law concerning *nolo* pleas. In the federal system the trial judge has the discretion to reject a *nolo* plea. In Alaska a defendant may plead *nolo* rather than guilty as a matter of right. *Miller v. State,* 617 P.2d 516, 518 (Alaska 1980); *Lowell v. State,* 574 P.2d 1281, 1285 (Alaska 1978).

*Pletnikoff,* 765 P.2d at 979–80 (Matthews, C.J., dissenting).

**12.** Alaska Statute 12.47.010(a) states as follows:

In a prosecution for a crime, it is an affirmative defense that when the defendant engaged in the criminal conduct, the defendant was unable, as a result of a mental disease or defect, to appreciate the nature and quality of that conduct.

**13.** Alaska Statute 12.47.020(a) provides as follows:

Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a culpable mental state which is an element of the crime.

**14.** Alaska Statute 12.47.030(a) provides as follows:

A defendant is guilty but mentally ill if, when the defendant engaged in the criminal conduct, the defendant lacked, as a result of a mental disease or defect, the substantial capacity either to appreciate the wrongfulness of that conduct or to conform that conduct to the requirements of the law. A defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct and is subject to the provisions of AS 12.47.050.

### C. Burcina Waived Any Claims for Injuries Unrelated to the Arson Conviction

 Burcina argues that the superior court erred in dismissing his entire suit because public policy does not bar his claims for injuries unrelated to the arson conviction. Burcina contends that his injuries include mental anguish, loss of enjoyment of life and emotional distress which he suffered before he set fire to the Drop–In Center.

We conclude that Burcina has waived this argument on appeal. As noted by Gateway and Dr. Huffman, Burcina failed to assert such a claim in his complaint,[15] he failed to include it in his responses to interrogatories,[16] he failed to include it in his statement of points on appeal, and he failed to oppose a motion for entry of final judgment dismissing his suit. In fact, Burcina suggested that his claims include injuries unrelated to the arson on only one occasion before the superior court. This appears in his memorandum in opposition to Dr. Huffman's motion for judgment on the pleadings. Burcina stated in a footnote as follows:

> Additionally, plaintiff suffered mental anguish prior to the February 5, 1988, arson, as he gradually became delusional during the period following Huffman's December, 1987, instruction to discontinue his anti-psychotic medication. As with the injury suffered by plaintiff after the arson,

this mental anguish did not occur *while* plaintiff was engaged in the commission of a felony, and AS 09.17.030 cannot bar plaintiff's claim for these pre-arson damages.

In *Jeffries v. Glacier State Telephone Co.,* 604 P.2d 4 (Alaska 1979), we held that an issue was not properly before our court where the issue was not properly raised or briefed at the superior court level and was not included in the statement of points on appeal. *Id.* at 11. As in the present case, the only reference to the issue appeared in a memorandum in opposition to a motion for judgment on the pleadings. *Id.* at 11 n. 26. Thus, based on our holding in *Jeffries,* we hold that any claims for injuries unrelated to the arson conviction are not properly before this court. *See also In re L.A.M.,* 727 P.2d 1057, 1059 (Alaska 1986); *Wickwire v. McFadden,* 633 P.2d 278, 281 n. 6 (Alaska 1981).

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's grants of summary judgment dismissing Burcina's claims against Gateway and Dr. Huffman.

---

**15.** In Count I of his complaint, Burcina alleges in part as follows:

> As a result of Defendant Gateway's failure to provide Plaintiff with medication, Plaintiff became psychotic. While in a psychotic state, Plaintiff set fire to the Mental Health Drop-in Center in Ketchikan, and as a consequence of this, he has suffered and will continue to suffer imprisonment, mental anguish, loss of income, loss of enjoyment of life and emotional distress.

> The allegations contained in Counts II, III and IV are essentially the same as Count I. Count I clearly states that Burcina's mental anguish, loss of enjoyment of life, and emotional distress are a consequence of Burcina setting fire to the Drop–In Center. Thus, Burcina's complaint does not advance any claims for injuries unrelated to the arson.

**16.** During discovery Gateway served interrogatories on Burcina. Interrogatory No. 7 asked:

Please describe the loss of enjoyment of life that you allege you have sustained in paragraphs 8 and 12 of your Complaint.

Burcina responded as follows:

> I became severely mentally impaired by psychosis and delusions of paranoid schizophrenia. I was in fear of my life and personal safety because of my paranoid delusions. I almost committed suicide on several occasions because I believed I was going to get a 22–year jail sentence. I was severely depressed during my jail time. I am still depressed because I lost my girlfriend because of the complaint and I almost committed suicide over that. I have bad memories of the delusional psychosis that makes me have nightmares. I have nightmares about prison life. In prison other prisoners taunted me because I was an arsonist and called me crazy. In Ketchikan, I have a reputation as the insane arsonist and am unable to get dates with women in my age group.

Thus, Burcina's response does not include claims for injuries unrelated to the arson conviction.