Warren L. REGISTER and Roger A. Register, Appellants,

v.

STATE of Alaska, Appellee.

Nos. A–7923, A–07943.

Court of Appeals of Alaska.

June 6, 2003.

---

Eugene B. Cyrus, Eagle River, for Appellant Warren L. Register. Scott A. Sterling, Sterling & DeArmond, Wasilla, for Appellant Roger A. Register.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Warren L. and Roger A. Register were charged with first-degree assault arising from the same incident. They ultimately reached plea agreements with the State; under these plea agreements, Warren and Roger were allowed to plead no contest to reduced charges of second-degree assault.

Later, the Register brothers were sued by the victim of the assault. The superior court ruled that because Warren and Roger had pleaded no contest to second-degree assault, they were now estopped from contesting the fact that they had used force against the victim. (The superior court also ruled, however, that the Registers could still assert that their use of force had been justified—either as self-defense, or as defense of each other, or for any other reason.)

In response to this ruling, the Registers asked the superior court to allow them to withdraw their no contest pleas. The Registers asserted that they had entered their pleas under the mistaken understanding that the pleas could not be used against them in related civil litigation, and they further asserted that they would not have pleaded no contest had they known that their pleas could in fact be used against them in the victim's civil suit.

Following an evidentiary hearing, the superior court denied the Registers' motions to withdraw their pleas.

In this appeal, the Registers ask us to declare that if a defendant enters a no contest plea based on the mistaken impression that this plea will not affect their ability to defend a related civil lawsuit, and then the defendant is sued and it turns out that the plea can be used against the defendant, the defendant's mistaken belief concerning the civil consequences of their no contest plea constitutes a sufficient reason for the defendant to be allowed to withdraw the plea.

We conclude that we need not answer this question. The superior court found that both Registers had in fact understood that their no contest pleas might be used against them in related civil litigation. The superior court further found that even if the Registers had mistakenly believed that their pleas could not be used against them in related civil litigation, this mistaken belief did not influence their decision to accept or reject the State's offered plea bargain. These findings are supported by the record. Because these findings are not clearly erroneous, (1) the legal issue that the Registers ask us to address is moot, and (2) the superior court properly denied the Registers' requests to withdraw their no contest pleas.

*Underlying facts*

In April 1996, Warren L. and Roger A. Register were indicted for first-degree assault arising from the stabbing of Phillip Carter. Six months later, in October 1996, they reached plea agreements with the State: both Register brothers were allowed to plead no contest to the reduced charge of second-degree assault.[1] Warren Register later received a sentence of 3 years' imprisonment with 2 years suspended (1 year to serve), thus securing his immediate release from prison. Roger Register received a sentence of 3½ years imprisonment with 2 years suspended (1½ years to serve).

The following year (1997), Carter filed a civil lawsuit against the Registers, seeking money damages for the stabbing. Based on

---

1. AS 11.41.210(a).

the fact that both Register brothers had pleaded no contest to second-degree assault arising from this incident, Carter asked the superior court to grant him summary judgement on the issue of liability. Superior Court Judge Eric B. Smith ultimately ruled that the Registers were estopped from denying that they had stabbed Carter. At the same time, however, Judge Smith ruled that the Registers were free to argue that their conduct was justified by self-defense, or by defense of others, or for any other reason.

The filing of Carter's motion for partial summary judgement prompted both Warren and Roger Register to file petitions for post-conviction relief, claiming that they should be allowed to withdraw their no contest pleas because they had been misled concerning the effect of those pleas on related civil litigation. Specifically, both Register brothers claimed that their decision to plead no contest had been influenced by their belief that their no contest pleas could not be used against them in any related civil lawsuit. The Registers asserted that this belief was engendered by the content of the advice-of-rights videotape that they viewed before their arraignment, and that this belief was later confirmed by what their attorneys told them during the consultations that preceded the entry of their pleas.

Judge Smith held a hearing to investigate the Registers' claims. At this hearing, it was undisputed that the advice-of-rights videotape that the Registers viewed in April 1996 did indeed inform arraignees that a plea of no contest could not be used against a person in related civil litigation. But there was substantial dispute concerning what the Registers' attorneys had told them about the consequences of a no contest plea during their pre-plea discussions.

*The Alaska Supreme Court's recent decisions concerning the effect of a no contest plea in related civil litigation*

Traditionally, one of the defining characteristics of a no contest plea was that it could

not be used against a defendant if the defendant was sued for damages arising from the criminal episode.[2] But in a series of recent decisions, the Alaska Supreme Court has suggested that this may no longer be the law.

In *Burcina v. Ketchikan,* 902 P.2d 817, 822 (Alaska 1995), the supreme court declared for the first time that "a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled nolo contendere".

The following year, in *Howarth v. Alaska Public Defender Agency,* 925 P.2d 1330, 1333 (Alaska 1996), the supreme court applied its holding in *Burcina,* ruling that a former client of the Public Defender Agency who was suing to recover money for alleged malpractice was collaterally estopped from asserting his innocence of a charge to which he had pleaded no contest.

And in *Lashbrook v. Lashbrook,* 957 P.2d 326, 330 n. 2 (Alaska 1998), the supreme court (again relying on *Burcina* ) held that a defendant in a child custody dispute was "precluded from challenging the facts which constitute the elements of the [domestic assault and weapons offense] to which he pled no contest".

*The evidence presented at the post-conviction relief hearing*

As explained above, the Register brothers asserted that their mistaken impression about the consequences of a no contest plea—their impression that their pleas could not be used against them in related civil litigation—was confirmed by what their attorneys told them during the plea negotiation process. During these plea negotiations, Roger Register was represented by attorney Sidney Billingslea, while Warren Register was represented by attorney Donna McCready.

The Register brothers entered their no contest pleas in October 1996. The *Burcina* decision had been issued one year before—on September 22, 1995. (The supreme court's

---

2. *See Miller v. State,* 617 P.2d 516, 518 (Alaska 1980). *Compare State v. Ruby,* 650 P.2d 412, 413–14 (Alaska App.1982) (holding that a plea of no contest may be used to establish the defen-

dant's violation of pre-existing probation, but the plea is not conclusive evidence of the defendant's commission of the new crime).

decision in *Howarth* was issued on November 8, 1996, just a few days after the Registers entered their pleas.)

Sidney Billingslea, the attorney representing Roger Register, testified that after the supreme court decided *Burcina*, "all [of her] clients received information that a no contest plea ... might as well be a guilty plea for purposes of fixing liability in ... a subsequent civil proceeding", and that "the plaintiffs in a civil case can take [the facts conceded by] that no contest plea as proved".

Billingslea was asked whether she gave this advice only to clients who asked about this issue, or whether she explained this point of law to all of her clients, regardless of whether they were concerned about civil liability. She replied, "No, ... I just give it.... It's kind of my *Miranda* warning".

Billingslea conceded that she had no direct memory of what she told Roger Register on this point. She stated that she was "fairly confident" that she gave this advice to Roger. But Billingslea added that if Donna McCready or the Register brothers had a specific memory to the contrary, the court should rely on that.

Roger Register then took the stand to rebut Billingslea's testimony. He stated that Billingslea never told him that a no contest plea might be used against him in civil litigation. Indeed, Roger asserted that, at some point during the representation, Billingslea expressly confirmed the accuracy of the information contained on the advice-of-rights videotape. Roger declared that he remembered Billingslea telling him "that they can not use your no contest plea as an admission of guilt ... in a civil litigation".

In response to further questions, Roger conceded that he had not asked Billingslea about this issue when he was getting ready to accept the offered plea bargain and enter his no contest plea. But he stated that Billingslea "never mentioned that the law had changed" from what she had previously told him.

Turning to Warren Register's case, Donna McCready testified she did not remember much about her discussions with Warren on this issue. (McCready explained that she had not reviewed her notes, nor did she have access to those notes, since she was testifying from her car via cell phone.)

McCready could not recall whether potential civil liability was a concern to Warren. She also said that, until the *Howarth* decision came out, she was unaware that a no contest plea might be used against a defendant in related civil litigation. (As noted above, *Howarth* was issued a few days after the Registers entered their pleas-but before they were sentenced.)

For his part, Warren Register asserted that he had a much firmer memory of the pre-plea discussions. He testified that he specifically asked McCready whether a no contest plea would put him at risk for civil liability, and he declared that McCready expressly advised him that a no contest plea could not be used against him in a related civil lawsuit. Warren stated that this conversation occurred in the courthouse holding cell, just before he was scheduled to appear in court for his trial call. Warren further stated that, had he known that his no contest plea might be used against him in related civil litigation, he would not have accepted the State's plea bargain.

### Judge Smith's findings of fact

As to the conflict between the testimony given by Sidney Billingslea and the testimony given by Roger Register, Judge Smith concluded that Billingslea's testimony was more credible. The judge stated, "Given Ms. Billingslea's obvious competence and her awareness of the *Burcina* decision, the court finds that she did not tell [Roger] Register that he could not be liable in a civil case if he pled no contest." Instead, Judge Smith found that it was "highly likely" that Billingslea gave Roger Register "the same advice ... that ... she routinely gave her clients once she learned of the *Burcina* decision"— the advice "that a no contest plea could well be used against him in a civil case".

Judge Smith further concluded that even if Roger Register had misunderstood the civil consequences of a no contest plea, this had no effect on Roger's decision to accept the State's plea bargain.

The judge noted that Roger was initially charged with first-degree assault, a class A felony carrying a maximum penalty of 20 years' imprisonment and a presumptive term of 7 years' imprisonment.[3] Under the State's plea bargain, Roger was offered the opportunity to plead guilty or no contest to second-degree assault, a class B felony. In addition, the State agreed to a sentence cap of 3 years to serve. Given these circumstances, Judge Smith concluded that it was "difficult to believe that the possibility of liability in a civil suit would have been enough to impel [Roger] Register to reject this rather lenient deal".

To resolve Warren Register's case, Judge Smith noted another aspect of Sidney Billingslea's testimony: Billingslea testified that "the bulk of her discussions on the issue of whether to [accept the] plea [bargain] were held ... with Ms. McCready and both of the Registers".

Judge Smith noted that Billingslea's routine advice to clients changed after the supreme court issued the *Burcina* decision in 1995—that, after *Burcina*, "she routinely advised clients that a no contest plea was equivalent to a guilty plea for purposes of civil liability". Based on the fact that the Registers and their attorneys discussed the proposed plea bargain as a group, and on the fact that Billingslea made a point of explaining to her clients that a no contest plea could be used against them in related civil litigation, Judge Smith concluded that it was "quite possible that Mr. Warren Register received the benefit of Ms. Billingslea's opinion" concerning the civil consequences of a no contest plea.

Judge Smith further concluded that it was "highly unlikely" that Warren Register received the advice he claimed he was given— *i.e.*, advice that confirmed the videotape's mistaken description of the effect of a no contest plea. Judge Smith declared that he "[did] not find credible Warren Register's assertions that [his attorney] Ms. McCready confirmed the ... information [on the advice-

of-rights videotape] shortly before he walked into court [to accept the plea bargain]."

Moreover, similar to his ruling in Roger's case, Judge Smith concluded that even if Warren Register had misunderstood the civil consequences of a no contest plea, this had no effect on Warren's decision to accept the State's plea bargain.

The judge noted that Warren, like his brother Roger, was initially charged with first-degree assault, a class A felony carrying a maximum penalty of 20 years' imprisonment and a presumptive term of 7 years' imprisonment. Under the State's plea bargain, Warren was offered the opportunity to plead guilty or no contest to second-degree assault, a class B felony. In addition, the State agreed to a sentence cap of 3 years to serve. Moreover, when this initial plea bargain threatened to unravel, Warren "was able to persuade the state to make some additional sentencing concessions" in order to keep the plea bargain on track.

Given these circumstances, Judge Smith concluded that it was "difficult to believe that the possibility of liability in a civil suit would have been enough to impel [Warren] Register to reject this rather lenient deal."

Based on these findings, Judge Smith denied both Roger Register's and Warren Register's petitions to withdraw their pleas.

*Our review of Judge Smith's decision*

Under Alaska Criminal Rule 11(h)(3) and AS 12.72.040, it was the Registers' burden to prove by clear and convincing evidence that they were entitled to withdraw their pleas. Judge Smith concluded that the Registers had failed to meet this burden. Indeed, the judge concluded that Registers had failed to prove their case by even a preponderance of the evidence: he found that the true facts of the case were contrary to the Registers' assertions.

As the Registers concede, if they are to prevail in this appeal, they must demonstrate that Judge Smith's findings of fact are clearly erroneous.[4] We have reviewed the record,

---

3. *See* AS 11.41.200(b); AS 12.55.125(c) and (c)(2)(A).

4. *See Dolchok v. State,* 639 P.2d 277, 282–83 (Alaska 1982).

and we conclude that Judge Smith's findings are not clearly erroneous. It was Judge Smith's job to resolve the conflicts in the testimony and to draw inferences from the testimony. His resolution of the conflicts and the inferences he drew from the testimony are reasonable. We are not left with "a definite and firm conviction on the entire record that a mistake has been made".[5]

Accordingly, the judgements of the superior court are AFFIRMED.

**5.** *Geczy v. LaChappelle,* 636 P.2d 604, 606 n. 6 (Alaska 1981); *Mathis v. Meyeres,* 574 P.2d 447, 449 (Alaska 1978).